UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>  v.<br>KENDALL THRIFT,<br>        Defendant. | No. 2:14-cr-00308-GEB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**[*] |

Defendant moves to suppress "all items found in the search of his residence" located at 773 Shoreline Point, El Dorado Hills, California ("Defendant's home") "on the ground that law enforcement unlawfully searched his [home] . . . and unlawfully seized evidence pursuant to a state search warrant." (Def.'s Not. Mot. Suppress 1:20-24, ECF No. 21.) Defendant argues in the motion:

> Here, the [warrant for the search of Defendant's home] lacks probable cause because [the affidavit presented in support of the warrant] fails to show a link between [Jeremy] Zahn's criminal activity and [Defendant's] home. The affidavit fails in at least three ways. . . .
>
> [First, t]he warrant and affidavit do not mention [Defendant]. Further, neither alludes to anyone other than Mr. Zahn. There are no allegations about Mr. Zahn being involved in an enterprise with anyone else.

---

[*] This matter is suitable for decision without oral argument.

1

> [Second, t]he warrant and affidavit state that Mr. Zahn stayed for several hours at [Defendant's home]. However, there is no further information about the home. . . . [T]he affidavit does not mention any suspicious activity involving [Defendant's] home.
>
> [It] is solely mentioned as a place that Mr. Zahn would visit. . . .
>
> . . . .
>
> . . . [Third, the affidavit does not show any connection between the drugs found in Mr. Zahn's car and Defendant's home.] During the search of Mr. Zahn's car three large brown packages containing approximately 15 pounds of marijuana were found. The police searched Mr. Zahn's home and found marijuana and marijuana packaging. All of which is detailed in the affidavit. Notably absent in the affidavit is any connection between the packages and [Defendant's] home.
>
> The officers were watching [Defendant's home] when Mr. Zahn was inside and observed him get into his car and leave. However, the affidavit does not include any information about Mr. Zahn leaving the house with packages. This silence speaks volumes. There is no connection between the contraband found and [Defendant's] home.

(Def.'s Mem. P.&A. Supp. Mot. Suppress ("Def.'s Mot.") 3:11-17, ECF No. 21 (headings omitted) (internal quotation marks and citations omitted).)

Defendant further argues that the "good faith exception [to the probable cause requirement] is *per se* inapplicable" here, since the "affidavit does not allow even a colorable argument that probable cause existed when the warrant was executed." (Id. at 7:7-8, 7:16-18.)

The government counters that "[t]he affidavit contains probable cause," arguing "[t]he defendant seeks to look at

2

individual facts while ignoring the totality of the circumstances." (Gov't Opp'n 8:10-13, ECF No. 22.) The government contends, *inter alia*:

> [Defendant] seeks to isolate one fact – that Zahn spent time at [Defendant's home] – while ignoring the totality of the affidavit. Probable cause is based on the totality of the circumstances, not individual facts looked at in isolation. Here, probable cause is not based just on Zahn visiting [Defendant's home]. Rather it is the accumulation of evidence. . . . Zahn spent "large quantities of time" at the residence for "several hours on numerous days." Zahn['s] phone contained text messages related [to] a conspiracy to purchase, process, and sell marijuana. Zahn's phone included pictures of large amounts of cash and several firearms. Zahn's house was searched twice and no firearms were recovered and only a small amount of marijuana was recovered.
>
> . . . .
>
> . . . This is consistent with Detective Tedford's [opinion] that marijuana traffickers utilize stash houses to stockpile or hide their illicit items of contraband or illegal activity from law enforcement. Indeed Det. Tedord noted that employing stash houses was especially true with those individuals like Zahn who are currently under probation or have a searchable status. Accordingly, it was reasonable to seek . . . evidence of drug trafficking at [Defendant's home].

(Id. at 9:9-10:2, 13:11-18 (internal quotation marks, citations, and brackets omitted).)

"The probable cause standard for a search warrant is whether, based on common sense considerations, there was 'a fair probability that contraband or evidence of a crime would be found in a particular place.'" United States v. Ruiz, 758 F.3d 1144, 1148, (9th Cir. 2014) (brackets omitted) (quoting United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992)). "For probable

3

cause, an affidavit must establish a reasonable nexus between the . . . evidence [sought] and the location to be searched." <u>United States v. Crews</u>, 502 F.3d 1130, 1136-37 (9th Cir. 2007). "The magistrate judge need not determine 'that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" <u>Id.</u> (quoting <u>United States v. Ocampo</u>, 937 F.2d 485, 490 (9th Cir. 1991)) (ellipses omitted). "Direct evidence that contraband . . . is at a particular location is not essential to establish probable cause to search the location. A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." <u>United States v. Anguelo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986) (citation omitted).

"If a warrant lacks probable cause, evidence obtained during its execution should generally be suppressed under the exclusionary rule." <u>United States v. Underwood</u>, 725 F.3d 1076, 1084 (9th Cir. 2013). "However, in <u>United States v. Leon</u>, the Supreme Court set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant." <u>United States v. Crews</u>, 502 F.3d 1130, 1135-36 (citing <u>United States v. Leon</u>, 468 U.S. 897, 925 (1984)). "For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner." <u>Id.</u> at 1136. "The affidavit 'must establish at least a colorable argument for probable cause' for the exception to apply." <u>Id.</u> (quoting <u>United States v. Luong</u>, 470

F.3d 898, 903 (9th Cir. 2006)). "The burden of demonstrating good faith rests with the government." Underwood, 725 F.3d at 1085.

The applicable search warrant authorized the search of Defendant's home for, *inter alia*, "[a]ny firearms[,] . . . [m]arijuana[, and] paraphernalia commonly associated with the possession, packaging, and/or sale of marijuana." (Search Warrant 2, Decl. John Virga Supp. Def.'s Mot. ("Virga Decl."), Ex. A, ECF No. 21-2.) Detective Kyle Tedford authored the affidavit presented in support of the search warrant. That affidavit contains, in relevant part, the following information:

> On 3/17/2014, [Citrus Heights Police Officer Herman] conducted a traffic stop on a silver 2000 Lexus (CA license plate 6BTB799), for a vehicle code violation. Officer Herman identified the driver as Jeremy Zahn by his valid California Driver's license. Officer Herman conducted a records check of Zahn, and he was on active California Post Release Community Supervision (PRCS) probation through October 2015, and is a convicted felon.
>
> Officer Herman smelled a strong odor of marijuana . . . emitting from inside of the vehicle. Officer Herman searched the interior of the vehicle, pursuant to Zahn's probation conditions, and located a . . . cellular phone . . . . Officer Herman searched the phone and located several photographs contained within Zahn's phone[, including the following images:] . . . .
>
> A large amount of what appears to be marijuana, totaling at least twenty five pounds, packaged in approximately one pound increments. [Based on his] training and experience, [Detective Tedford stated this] amount of marijuana, . . . packaged separately in approximately one pound increments, is for sales.
>
> A large amount of US currency, of six stacks of bills with $100 bills on the top. There was another photograph of 22, $100 bills spread out on an unknown persons lap

inside of a vehicle.

. . . [A]n AK-47 style long rifle (Attaclunent D), two AR-15 type of long rifles, a Glock semi-automatic hand gun with Zahn's right hand on the gun, identified by Zahn's right hand tattoos; And an unknown make semi-automatic/or automatic style hand gun with a large magazine. Officer Herman noticed the subject holding the Glock semi-automatic handgun was Zahn, as evidence[d] by the tattoos Herman observed on Zahn's arm at the time of the stop be[ing] the same as the tattoo seen in the photograph.

Based on [Detective Tedford's] training and experience as well as conversations [he] ha[s] had with other experienced detectives, [Detective Tedford states] that marijuana/narcotics dealers often are in possession of firearms to protect themselves from subjects they are going to sell marijuana/narcotics to[]. A CII records check on Zahn revealed he is a convicted felon, and cannot possess any firearms . . . . Furthermore, Zahn's probation conditions state that he cannot possess firearms, nor be in the presence of anyone in possession of any dangerous weapons.

Officer Herman searched text messages located in Zahn's phone. Officer Herman located several text messages relating to the sales of marijuana. . . .

Officer Herman and other CHPD Officers went to Zahn's residence . . . to conduct a probation search . . . . Officer Herman located a gallon size plastic zip lock bag that was approximately 2/3 full of processed marijuana (approximately 6-8 ounces). Officers searched the garage and located several large grow lamps and inverters, which were not hooked up at that time. . . .

Based on [Detective Tedford's] training and experience[, he stated that] subjects who possess large grow lamps and inverters, often use[] . . . lamps and inverters to grow marijuana.

Based on [his] training and experience, and with speaking with other experienced Detectives, [Detective Tedford opined] from the text messages, photographs of the

firearms, the marijuana, and the large lamps, that Zahn is currently involved with selling/purchasing/manufacturing marijuana and may be in possession or have access to firearms.

. . . .

During the month of March, 2014, Detective A. Azevedo drove to [Zahn's residence], and observed a silver Lexus parked in the driveway . . . registered to Zahn.

Based on Zahn's probation status, detective Azevedo and probation officer C. Cottengim affixed a tracking device to the silver Lexus [in] which Zahn had been previously stopped. A tracking device [was] affixed to the vehicle . . . for approximately 16 days, [when] it [was] repeatedly observed, via its Internet tracking system by Detective Azevedo, as stopping for long periods of time, several hours at [Defendant's home]. During the course of the approximately 16 days in which the tracking device was affixed to the vehicle, probation officer Cottengim physically observed the silver Lexus . . . in the driveway of [Defendant's home].

On 4/9/2014, at approximately 0930 hours, Detective Azevedo observed via the online tracking system that the tracker affixed to Zahn's vehicle was currently stopped at [Defendant's home]. Detective Azevedo and probation officer Cottengim responded to the location and observed the vehicle in the driveway until approximately 1545 hours when Zahn was observed entering the vehicle and leaving the area in the vehicle. Officers advised Citrus Heights Police Department on-duty officers of its location utilizing the online tracking system at which time a traffic stop was conducted on the vehicle at approximately 1600 hours.

A probation search of the vehicle and Zahn's person yielded two sets of keys, approximately $831 in US currency, and three large brown packages affixed with UPS labels each going to different locations. A K-9 officer responded to the scene at which time the K-9 alerted on the packages. Within one of the packages, officers located . . .

approximately 15.6 (total net weight) pounds of a green leafy substance which they immediately recognized as processed marijuana. . . .

Officers conducted a probation search at [Zahn's residence], and located several items of marijuana packaging indicia[, including] several zip top bags containing a green leafy substance which they recognized as marijuana. . . . Within the garage of the residence, officers located four (4) 1000 kilowatt bulbs and two (2) electronic ballasts, along with several electronic timers and wiring kits. . . .

Officers also located a small container with a golden brown tacky substance which they immediately recognized as cannabis hash oil. Officers also located a ceramic plate within the garage of the residence which also had cannabis hash oil upon it.

Based on the above listed events, the items located in the possession of Jeremy Zahn as well as the items located at his place of residence, it [wa]s the [stated] belief of [Detective Tedford] that officers w[ould] locate additional evidence of marijuana sales and marijuana cultivation at [Defendant's home].

Based on [Detective Tedford's] training, experience and/or conversations that [he has] had with other Law Enforcement Officers and/or reports that [he has] read:

[Detective Tedford stated that he] know[s] . . . the trafficking of large quantities of marijuana requires the cooperation and association of numerous individuals. As a result, persons who traffic in marijuana will often possess documents that will identify other members of the organization . . . .

[Detective Tedford further stated:] that persons engaged in a conspiracy to commit felony crimes often communicate with each other and coordinate their drug trafficking activities by telephone and /or cellular phone[;] . . .

that persons engaged in the possession of marijuana for sales, and the transportation

8

>of marijuana for sales, and the cultivation of marijuana, will often arm themselves with a firearm for protection against robbery or personal harm[;]
>
>. . . that individuals engaged in the legal sales, possession, and transportation of marijuana/narcotics will often keep additional locations and/or storage containers, commonly referred to as ["]stash houses["] . . . in which to stockpile or hide their illicit items of contraband or illegal activity from law enforcement[,] . . . especially . . . individuals who are currently under probation or have a searchable status.
>
>[Detective Tedford opined] that Zahn's observed behavior and observed association with [Defendant's] residence, via the online tracking system related to the tracker affixed to his vehicle, is indicative of his familiar association [thereto]. The large quantities of time spent at this residence, several hours spent on numerous days, indicate a serious association and familiarity with the residence which, in [his] training and experience, extends [Zahn's] association further than that of a quick drop off or casual visit.
>
>. . . [Detective Tedford stated that he] believe[s] . . . the occupants residing at the location listed on th[e] Search Warrant, have committed, and are engaged in an ongoing conspiracy to commit, the felony crime of possession for sales of marijuana, sales of marijuana, transportation of marijuana, unlawful possession of firearms and ammunition, and that evidence of these crimes will be found at the [location] listed on th[e] Search Warrant.

(Aff. Det. Kyle Tedford Supp. Search Warrant ("Tedford Aff.") 2-6, Virga Decl., Ex. A.)

Here, Detective Tedford's "affidavit was not so lacking in indicia of probable cause as to render reliance upon it objectionably unreasonable." Crews, 502 F.3d at 1136. Therefore, decision on whether the affidavit provided probable cause is

9

unnecessary. Id. ("Before embarking on the exercise of determining whether the affidavit supported probable cause, we may proceed directly to the issue of whether there was good faith reliance."). Zahn's cell phone contained several text messages relating to marijuana sales and photographs of "[a] large amount of marijuana," "[a] large amount of US currency," and multiple firearms, one of which was being held in the photograph by Zahn. (Tedford Aff. 3.) However, two searches of Zahn's residence recovered only a small amount of marijuana and no firearms. Further, use of a tracking device and surveillance evinced Zahn spent "large quantities of time" at Defendant's residence; "several hours on numerous days." (Id. at 6.) And, Detective Tedford stated based upon his experience and training that "individuals engaged in the . . . sales, possession, and transportation of marijuana[] will often keep additional locations . . . commonly referred to as 'stash houses[,]' in which to stockpile or hide their illicit items . . . from law enforcement[,]" especially "those individuals who . . . currently . . . have a searchable status" like Zahn. (Id. at 5; see United States v. Parks, 285 F.3d 1133, 1142 (9th Cir. 2002) (stating "in determining whether probable cause exists," "the court issuing the warrant is entitled to rely on the training and experience of police officers." (quoting United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995)).) This information showed "indicia of . . . a reasonable nexus between [the property identified in the search warrant] and [Defendant's home] . . . such that an officer could have reasonably relied upon it in good faith." Crews, at 137; see generally, United States v. Christian, 554 F. App'x 188, 190 (4th

Cir. 2013) (indicating evidence that the defendant "regularly spent time" at a location and a police officer's assertions based on his experience that the defendant would "likely store his drugs and related items . . . at a residence or business which is used as a 'stash house'" supported probable cause for a warrant to search the apartment); United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1995) (stating "Davidson correctly points out that the affidavit does not state that officers observed drugs or evidence going into or out of his residence[; h]owever, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983))).

For the stated reasons, Defendant's suppression motion is denied.[1]

Further, the hearing scheduled on August 7, 2015, for argument on Defendant's suppression motion is converted to a status hearing.

Dated: August 4, 2015

GARLAND E. BURRELL, JR.
Senior United States District Judge

---

[1] In light of this ruling, the Court "do[es] not reach the government's argument that [Defendant] lacked standing to challenge the search." United States v. Garcia-Gillalba, 585 F.3d 1223, 1234 n.6 (9th Cir. 2009).