UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KENDALL GRANT THRIFT,<br><br>　　　　Defendant. | No.  2:14-cr-00308-JAM<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant Kendall Grant Thrift's ("Defendant") Motion for Compassionate Release pursuant 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 102. Defendant filed his opening brief pro se and subsequently obtained appointed counsel who filed a supplemental brief in support of Defendant's Motion. Suppl. Mot., ECF No. 109.  The United States ("Government") opposes this motion.  Opp'n, ECF No. 113.  For the reasons set forth below the Court DENIES Defendant's motion.

   I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

   On June 3, 2016, Defendant pled guilty to: (1) conspiracy to make, distribute, manufacture, and to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, 841(a);

1

(2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); (3) being a prohibited person in possession of firearm, in violation of 18 U.S.C. § 922(g); (4) money laundering, in violation of 18 U.S.C. § 1957; and (5) conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h).  Suppl. Mot. at 2.  Defendant was sentenced on January 6, 2017 to 188 months imprisonment and 60 months supervised release.  Id.

Defendant is presently serving his sentence at FCI Lompoc, California.  Id.  He has only served about 71-months (37.6%) of his sentence and is projected to be released on December 5, 2027, based on his good conduct time.  Opp'n at 2-3.

On March 13, 2020, President Trump declared a national emergency concerning the COVID-19 global outbreak.  See *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, THE WHITE HOUSE (March 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.  Because of the severity posed by this pandemic, the U.S. Attorney General ordered the Bureau of Prisons (BOP) to prioritize home confinement when appropriate "to protect the health and safety of BOP personnel and the people in [] custody."  The Attorney General, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*, Memorandum for Director of Bureau Prisons, OFFICE OF THE ATTORNEY GENERAL (March 26, 2020), https://www.themarshallproject.org/documents/6820452-Memorandum-from-Attorney-General-to-BOP-re-Home.  Accordingly, Defendant

2

1  filed a request to be released under 18 U.S.C. § 3582 on April
2  30, 2020 with the Warden of FCI Lompoc, stating that his asthma,
3  hypothyroid issues, chronic sinus, and chronic lung infections,
4  placed him at heightened risk for COVID-19 complications.  Mot.,
5  Exh. 3, at 1.  The Warden did not respond to Defendant's motion.
6      Soon after Defendant filed his request with the BOP, the
7  COVID-19 conditions at FCI Lompoc dramatically worsened.  By May,
8  nearly 96% of prisoners at FCI Lompoc had tested positive—
9  including Defendant.  Alex Wigglesworth, *Officials Mishandled*
10 *Coronavirus Outbreaks at Lompoc and Terminal Island Prisons,*
11 *Lawsuits Claims*, LOS ANGELES TIMES (May 17, 2020),
12 https://www.themarshallproject.org/documents/6820452-Memorandum-
13 from-Attorney-General-to-BOP-re-Home.  Defendant tested positive
14 for COVID-19 on May 5, 2020.  Suppl. Mot., Exh. 9, at 25.  As of
15 July 24, 2020, four prisoners have died at FCC Lompoc
16 (Defendant's facility including FCI and USP Lompoc).  See Federal
17 Bureau of Prisons, *COVID- 19 Coronavirus* (July 24, 2020), https:/
18 /www.bop.gov/coronavirus/.  And there are currently twelve
19 confirmed positive cases.  Id.
20      Although Defendant is not currently one of those confirmed
21 positive cases, he asks the Court to consider his health
22 conditions to be an extraordinary and compelling circumstance and
23 convert his remaining time to "time served" with an additional
24 period of home confinement.  Supp. Mot. at 15.
25 ///
26 ///
27 ///
28 ///

II.   OPINION

A.   Legal Standard

A court may generally "not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824-25(2010).  Passed in 2018, the First Step Act (FSA) modified 18 U.S.C. Section 3582 to grant federal courts such authority under certain exceptions.  18 U.S.C. § 3582(c)(1)(A).  To file a motion for modification with the court, a defendant must first submit a request for release with the Bureau of Prisons ("BOP").  Id.  The defendant must then exhaust administrative remedies by either (1) administratively appealing an adverse result or (2) waiting for 30 days to pass.  Id.  Only then may a defendant, or the Director of the BOP, file a motion for modification.  Id.  The Court can then modify the term of imprisonment after considering any relevant factors set forth in Section 3553(a), and if it finds, in relevant part, that "extraordinary and compelling reasons warrant such a reduction."
18 U.S.C. § 3582(c)(1)(A)(i).

B.   Analysis

1.   Exhaustion Requirement

As a threshold matter, a defendant must generally exhaust his administrative remedies before the Court can address the merits of a motion for compassionate release.  See U.S. v. Kesoyan, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *2 (E.D. Cal. April 28, 2020).  More than thirty days have passed since Defendant submitted his request with the Warden for compassionate release on April 30, 2020.  As the Government

concedes, Defendant has met the exhaustion requirement. Opp'n at 3.

          2.   <u>Extraordinary and Compelling Circumstance</u>

After a defendant has met the threshold exhaustion requirement, a court may grant the motion if it finds "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." <u>Id.</u> Congress has not defined what constitutes as "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, it has delegated that responsibility to the Sentencing Commission. <u>Id.</u> Before the FSA was passed, the Commission concluded "extraordinary and compelling reasons" were limited to four scenarios. U.S.S.G. § 1B1.13. These scenarios include: (A) the medical condition of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) a catchall provision. <u>Id.</u>

Subdivision (A) considers the medical condition of a Defendant as a possible extraordinary and compelling circumstance. Reply, ECF No. 116, at 3. Relevant here, under this subdivision an extraordinary and compelling reason exists if a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he. . . is not expected to recover." U.S.S.G. § 1B1.13(1)(A)(ii)(I). The Government concedes that Defendant's obesity, with a BMI of 32.6, falls

within this category.  Opp'n at 9.  Defendant also contends that he is at increased risk for severe complications from COVID-19 because of his psoriasis and symptoms he is currently experiencing since testing positive for COVID-19.  Reply at 3.

While the Court recognizes that Defendant may not fully recover from his obesity or his psoriasis, the Court find these serious health conditions do not presently "substantially diminish" his ability "to provide self-care" while at FCC Lompoc.  U.S.S.G. § 1B1.13(1)(A)(ii)(I).  The Court does not make light of the breathing problems and high blood pressure Defendant has suffered since testing positive for COVID-19 two months ago.  See Reply at 4.  But he has not suffered any serious complications since, despite having underlying high-risk medical conditions.  And the BOP has been able to adequately manage any symptoms he has suffered.  Opp'n at 9.  For example, he was prescribed an asthma inhaler to manage his breathing problems.  Reply at 4.

The Court is also aware that FCI Lompoc largely failed to control the spread of COVID-19, initially leading to one of the worst outbreaks in the nation.  See United States v. Eddings, No. 2:09-cr-00074, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (making the same recognition).  But based on Defendant's medical records, "it appears FCI Lompoc is adequately monitoring and caring for [him]."  Id.  The Court therefore cannot find his situation to be "extraordinary or compelling."  Id.  Nor can the Court speculate regarding a possible second infection, given the lack of clarity from the scientific community that it is even possible.  See Apoorva Mandavilli, *Can You Get Covid-19 Against? It's Very Unlikely, Experts Say*, THE NEW YORK TIMES (July 22, 2020)

6

https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html (finding reinfection unlikely, and instead more likely the cause of "drawn-out illness.")  And even if it was, the Court would still deny Defendant's motion because granting early release would undermine section 3553(a) sentencing factors.

### 3. Sentencing Factors

In deciding whether compassionate release is warranted, the Court must also consider the relevant factors set forth in 18 U.S.C.A. Section 3553.  18 U.S.C. § 3582(c)(1)(A)(i).  The Court agrees with the Government that these factors do not warrant a sentence reduction.  See Opp'n at 13.

In considering "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), Defendant minimizes the seriousness of his offense by stating the "only drug involved was marijuana and the firearms . . . were not [] used in the offense."  Reply at 9.  While Defendant "only" trafficked marijuana, he was found with a significant amount of marijuana and  firearms to warrant a sentence reduction.  At the time of his arrest, the Government seized 846 pounds of marijuana and seven firearms from Defendant's home.  Opp'n at 2.  The Court also must consider the "need for the sentence imposed."  18 U.S.C. § 3553(a)(2).  And reducing Defendant's sentence by 117-months (62%), would not reflect the seriousness of his offense. Id. at (a)(2)(A).  Moreover, although he has done well in prison, the Court agrees with the Government that Defendant still poses a danger to the community.  Opp'n at 12.  Defendant not only unlawfully possessed seven firearms—three of those were stolen and two were AR-15 style weapons.  Id.  The Court therefore does

not find that granting either a sentence reduction or home confinement is warranted.

## III.   ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release.

IT IS SO ORDERED.

Dated: July 28, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

8