UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>KENDALL GRANT THRIFT,<br><br>Movant. | No. 2:14-cr-0308 DAD DB<br><br><br><br>ORDER |

Movant, Kendall Thrift, is a federal prisoner proceeding through counsel with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. This matter was referred to the undersigned. (See ECF No. 101.)

Movant stands convicted marijuana related offenses, money laundering, and a firearms offense, for which he was sentenced to a total term of imprisonment of 188 months. Movant asserts ineffective assistance of counsel in connection with his guilty plea and sentencing. The motion to vacate (ECF No. 99), government's response (ECF No. 136), movant's reply (ECF No. 140), and movant's supplemental exhibit (ECF No. 142) are before the court. For the reasons that follow, the court will hold an evidentiary hearing on the issue of the voluntary and intelligent character of movant's plea.

////

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Guilty Plea, Sentence, and Notice of Appeal

On June 3, 2016, movant pleaded guilty to five counts in the Superseding Indictment (ECF No. 49): conspiracy to distribute, manufacture, and possess with intent to distribute marijuana; possession with intent to distribute marijuana; prohibited person in possession of firearms; money laundering; and conspiracy to launder monetary instruments. (ECF No. 67.)

In exchange for movant's guilty plea, the government agreed to dismiss count two, a manufacture of marijuana count. (ECF No. 7 at 6.) The government also agreed to recommend a two-level reduction in offense level for acceptance of responsibility and a sentence within the applicable Sentencing Guidelines ("Guidelines") range as determined by the court. (Id. at 7.)

Movant's Plea Agreement provided there was no "binding prediction or promise regarding the sentence," "sentencing is a matter solely within the discretion of the Court," and the court could impose "any sentence it deems appropriate up to and including the maximum." (ECF No. 67 at 2.) In addition, the following exchange occurred during entry of movant's guilty plea:

> THE COURT: Do you understand that the sentence you receive may be different from any estimate your attorney may have given you?
>
> THE DEFENDANT: Yes, sir.

(ECF No. 93 at 11.)

As part of the Plea Agreement, movant waived his right to appeal, except as to the denial of the motions to suppress, unless the government appealed or the court imposed a sentence in excess of the statutory maximum. (ECF No. 67 at 10-11.) The plea agreement stated, specific to collateral attack, "regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims." (Id. at 11.)

On January 6, 2017, the court sentenced movant at the high end of his Guidelines range to a 188-month term of imprisonment. Specifically, the court imposed the following concurrent sentences: 188 months for the conspiracy count (count one), 188 months for the possession of

marijuana with intent to distribute count (count three); 120 months on the firearms count (count four); and 120 months on two money laundering counts (counts five and six). (ECF No. 83, 87.)

The court entered judgment on January 17, 2017. (ECF No. 87.) Movant appealed, unsuccessfully, the denial of the motions to suppress litigated prior to the plea. (ECF Nos. 86, 88, 95, 96.)

**II.     28 U.S.C. § 2255 Motion and Government's Response**

Movant timely filed the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on January 6, 2020. (ECF No. 99.) Therein, movant claims he was coerced to plead guilty by his counsel's promises and failure to prepare for trial. In the second ground for relief, movant claims he received ineffective assistance of counsel at sentencing.

In opposition to the claim of ineffective assistance of counsel pertaining to the plea, the government contends the record does not support movant's claim that he was coerced into pleading guilty. (ECF No. 136 at 18-23.[1]) The government also argues movant has failed to demonstrate prejudice even if he could show counsel performed deficiently. (Id. at 23-26.) The government asserts movant's second claim, ineffective assistance of counsel at sentencing, is barred by the collateral attack waiver in the plea agreement. (Id. at 27.) In the alternative, the government argues movant has failed to show deficient performance by counsel and prejudice as to the sentence. (Id. at 27-30.)

**LEGAL STANDARDS FOR 28 U.S.C. § 2255**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief, the prisoner must demonstrate that an error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea, verdict, or sentence. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("Brecht's

---

[1] Citations to page numbers in the parties' briefing refer to the page number at the top of the document assigned by CM/ECF.

harmless error standard applies to habeas cases under section 2255"). Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 344-45 (1974).

Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively* show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Id. Mere conclusory statements in a section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

## LEGAL STANDARDS FOR INEFFECTIVE ASSISTANCE

There are two components to an ineffective assistance of counsel claim: deficient performance and prejudice. See Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Deficient performance means representation that "fell below an objective standard of reasonableness[.]" Stanley, 633 F.3d at 862 (citing Strickland, 466 U.S. at 688). To show deficient performance, movant must overcome a "strong presumption" that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. The relevant question as to counsel's performance is "not on whether a court would retrospectively consider counsel's advice to be right or wrong," but instead, "whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Carrera v. Ayers, 670 F.3d 938, 943 (9th Cir. 2011). To overturn the strong presumption of adequate assistance,

movant must demonstrate the challenged action cannot reasonably be considered sound strategy under the circumstances of the case. See Lord v. Wood, 184 F.3d 1083, 1085 (9th Cir. 1999).

Strickland's prejudice prong is met if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

## DISCUSSION

### I. Ineffective Assistance of Counsel / Voluntariness of the Plea

Movant alleges counsel rendered ineffective assistance during the plea-bargaining process by grossly misrepresenting sentencing consequences, failing to prepare, failing to communicate, and failing to discover, investigate and present exculpatory information. (ECF No. 99-1 at 39-48.) Claims that the plea or waivers therein were involuntary, or that ineffective assistance of counsel rendered the plea or waivers involuntary, cannot be waived. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993); Davies v. Benov, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017); Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005), cert. denied, 54 U.S. 1074 (2006). Thus, movant's plea waiver does not bar a claim that ineffective assistance of counsel rendered the plea involuntary.

#### A. Further Standards for the Plea Stage IAC Claim

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process, including the decision whether to accept or reject a plea offer. See Lafler v. Cooper, 566 U.S. 156, 162 (2012); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). To prevail on such a claim, movant must demonstrate "gross error on the part of counsel," Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)), and that the advice received from counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)).

Defense counsel must, "at a minimum, conduct a reasonable investigation enabling… informed decisions about how best to represent [the] client." Hendricks v. Calderon, 70 F.3d

5

1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted)). To establish deficient performance in regard to a sentencing prediction, a defendant must demonstrate more than a "mere inaccurate prediction." Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986). Instead, a defendant must demonstrate counsel "grossly mischaracterized" the likely outcome of a plea bargain. Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004); see also Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990).

For prejudice, in cases where a defendant claims ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Missouri v. Frye, 566 U.S. 134, 148 (2012) (citing Hill, 474 U.S. at 59). Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, such a determination will also "depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Hill, 474 U.S. at 59; see Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004) ("Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial."). The Supreme Court has instructed that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

### B. Movant's Involuntary Plea Claim

Former attorney Danny Brace[2] began representing movant after the suppression motions were litigated and movant ran out of funds to pay retained counsel. (ECF No. 99-2, Declaration of

---

[2] State Bar disciplinary charges were filed against Mr. Brace on October 5, 2017. He was disbarred on October 27, 2018. See Attorney Profile, https://apps.calbar.ca.gov/attorney/Licensee/Detail/114466, last visited October 19, 2022.

1  Kendall Thrift ("Thrift Decl."), ¶ 3.) When requesting an appointed attorney, movant advised the
2  Criminal Justice Act ("CJA") Panel Administrator, Mr. Heiser, that he intended to exercise his
3  right to trial, did not want to waive his speedy trial right, and hoped an attorney would be selected
4  who had sufficient time to prepare his case within those limits. (Id., ¶ 4; ECF No. 99-4,
5  Declaration of Kurt Heiser ("Heiser Decl."), ¶¶ 5-6.)[3] When Mr. Brace accepted the appointment,
6  movant believed counsel was available to prepare the case for trial within the statutory speedy
7  trial time constraints. (ECF No. 99-2, Thrift Decl., ¶ 5.)

8        Mr. Brace was appointed to represent movant on March 24, 2016. (ECF No. 47.) At a
9  status conference on the same date, a trial confirmation hearing was set for April 15, 2016, and
10  jury trial was set on May 24, 2016. (ECF No. 48.)

11        The government filed a Superseding Indictment on April 14, 2016. (ECF No. 49.) Movant
12  was arraigned on April 19, 2016. (ECF No. 53.) The trial confirmation hearing was reset to take
13  place on May 13, 2016, and the trial date was reset for June 14, 2016. (ECF No. 56.)  At the trial
14  confirmation hearing, the court ordered motions in limine to be filed on May 24, 2016, and the
15  parties confirmed the trial date of June 14, 2016. (See ECF Nos. 58, 59, 91 at 2:13-23.)

16        Ultimately, movant pleaded guilty in a Plea Agreement he signed on June 1, 2016. (ECF
17  No. 67.) Movant alleges he entered the plea because Mr. Brace had not engaged in the meaningful
18  preparation for trial necessary to competently defend the case, and because Mr. Brace promised
19  movant his exposure under the Guidelines was 70-87 months, when his actual exposure under the
20  Plea Agreement was 151-188 months, as reflected in the Presentence Investigation Report
21  ("PSR"). (ECF No. 99-2, Thrift Decl., at ¶¶ 19, 21; ECF No. 74 at 4, PSR.)

22        Movant alleges he had inadequate communication and contact with Mr. Brace throughout
23  the proceedings. (ECF No. 99-2, Thrift Decl., ¶ 9.) Movant recalls Mr. Brace visiting him on two
24  occasions, including the initial introduction and once thereafter, on or about May 21, 2016, for a

---

[3] According to Mr. Heiser, the first inquiry to Mr. Brace about finding appointed counsel for movant's case indicated "client wants to go to trial w/o further delay." (ECF No. 99-4, Heiser Decl., ¶ 5.) Mr. Heiser does neither recalls, nor do emails reflect, whether Mr. Brace advised of any schedule conflicts regarding his ability to prepare effectively for trial "w/o further delay." (Id., ¶ 6.)

7

total of about 1.5 hours. (Id.) Movant alleges his attempts to reach Mr. Brace by telephone were mostly unsuccessful. (Id.) On several occasions, movant asked his father to relay messages to Mr. Brace. (Id., ¶ 10.) Movant's father would relay messages, but also found it difficult to reach counsel. (ECF No. 99-3, Declaration of Kevin Thrift ("Kevin Thrift Decl."), ¶ 5.)

Approximately three times prior the plea, movant contacted the CJA Panel Administrator, expressing frustration and concern over his inability to communicate with Mr. Brace and about the lack of preparation being conducted on his case. (ECF No. 99-2, Thrift Decl., ¶ 10; ECF No. 99-4, Heiser Decl., ¶¶ 7-10.) On March 28, May 20, and May 25, 2016, the CJA Panel Administrator relayed information to Mr. Brace upon receiving complaints from movant about not being able to reach counsel. (ECF No. 99-4, Heiser Decl., ¶¶ 3, 7-11, 13.)

The record indicates that on May 20, 2016, Mr. Brace was simultaneously representing another defendant in a murder trial. (ECF No. 99-2, Thrift Decl., ¶ 6; ECF No. 99-4, Heiser Decl, ¶ 10.) Movant alleges this greatly restricted Mr. Brace's ability to meet and communicate with him and work on movant's defense. (ECF No. 99-2, Thrift Decl., ¶ 6.)

In addition to the alleged failure to communicate, movant alleges Mr. Brace failed to evaluate discovery and failed to provide movant with discovery materials which movant requested and needed to review to make an informed decision about whether to accept or reject the proposed plea agreement. (ECF No. 99-2, Thrift Decl., ¶ 12.) According to movant, Mr. Brace allegedly blamed his failure to produce copies of discovery on his own negligence, insufficient printing capabilities, and what he deemed relevant for movant to review. (Id.) Movant argues that because of counsel's failure to provide discovery, he was forced to decide whether to accept or reject the proposed agreement without the benefit of full knowledge of the evidence. (ECF No. 99-1 at 14.)

Movant further alleges Mr. Brace failed to gather and present exculpatory information about his personal history to use for meaningful negotiations. (ECF No. 99-2, Thrift Decl., ¶¶ 15, 29; see ECF No. 99-1 at 28-30.) Specifically, despite having been informed that movant had experienced childhood trauma, exasperated by military service, and that he suffered from Post Traumatic Stress Disorder ("PTSD"), movant alleges Mr. Brace did not make the necessary

inquiries or conduct any investigation to be used in plea negotiations. (Id.) Movant alleges Mr. Brace never asked for details about movant's military service and awards received, and that when movant raised issues about his personal history, counsel advised they were not relevant or helpful. (Id., ¶¶ 29, 30.)

Movant alleges he provided Mr. Brace with a list of witnesses who could help in his defense. (ECF No. 140-1, Thrift Decl. 2, ¶ 5.) According to movant, Mr. Brace did not make any known attempts to contact potential witnesses, obtain documents to support the defense case, or impeach government witnesses and evidence. (ECF No. 99-2, Thrift Decl., ¶ 14.)

As the case proceeded to trial, the government filed three motions in limine on May 24, 2016. (ECF Nos. 61, 62, 63.) Responses to the government's motions in limine were due on May 31, 2016. (See ECF No. 58.) No motions in limine or responses to the government's motions in limine were filed on movant's behalf.

The record reflects that Mr. Brace did not request funds for an investigator in movant's case, despite allegedly assuring movant that he was requesting resources necessary for trial preparation. (ECF No. 99-2, Thrift Decl., ¶ 13.) On May 25, 2016, after receiving a complaint from movant about not being able to reach counsel, the CJA Panel Administrator emailed Mr. Brace to relay information. (ECF No. 99-4, Heiser Decl., ¶ 11.) In a follow-up email on May 26, 2016, Mr. Heiser suggested that Mr. Brace put in a request for investigator funds "since it is headed to trial" and offered assistance with the "really easy" procedure. (Id.) The record reflects Mr. Brace did not request any ancillary funds for an investigator, expert, or consultant for any pre-trial or pre-plea purpose in Mr. Thrift's case. (Id., ¶ 12.)

Also on May 26, 2016, 11 days before movant signed the plea agreement and just under three weeks before the June 14, 2016 trial date, movant wrote a letter to Judge Burrell. (ECF No. 99-2, Thrift Decl., ¶ 16, Attachment 1.) Movant's letter to Judge Burrell indicated Mr. Brace had been unable to meet with movant due to the simultaneous murder trial, that movant had not been provided with discovery materials he requested, and that Mr. Brace had not spent any significant time with movant on the case such that movant felt he had effectively been deprived of counsel. (Id.) Movant expressed doubt that Mr. Brace could competently represent him at trial and

9

1    suggested he would be better off representing himself with standby counsel. (Id.) According to
2    movant, within a few days of writing this letter to Judge Burrell, Mr. Brace visited him, and
3    through threats and false representations regarding sentencing consequences, coerced movant to
4    accept the Plea Agreement. (ECF No. 99-2, Thrift Decl., ¶¶ 17-22.)

5    The parties entered into a written and conditional Plea Agreement pursuant to Rule
6    11(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 67.) Under its terms, movant pleaded
7    guilty to Counts One, Three, Four, Five, and Six in the Superseding Indictment and Count Two
8    was dismissed at the time of sentencing. (See Id. at §§ IIA and IIIA.) Under the agreement,
9    movant retained the right to appeal the denial of the motions to suppress. (Id. at § I.A and VII.)
10   As set forth, the government agreed to recommend a sentence within the Guidelines range, as
11   determined by the Court, and agreed to recommend a two-level reduction for acceptance of
12   responsibility. (Id. § III.B.2.) The agreement did not include the applicable Guidelines
13   calculations.

14   Movant asserts he pleaded guilty because counsel grossly misrepresented sentencing
15   consequences by promising movant his exposure under the Guidelines was 70-87 months, when
16   his actual exposure under the plea agreement was 151-188 months. (ECF No. 99-1 at 39.)
17   According to movant's father, Mr. Brace made the same representation regarding sentence
18   exposure to him. (ECF No. 99-3, Keven Thrift Decl., at ¶ 8 ("I spoke directly to Mr. Brace who
19   told me that my son would receive a sentence of imprisonment of 5 ½ to 7 years if he accepted
20   the plea agreement.")

21   According to movant, counsel made the following specific misrepresentations in order to
22   falsely represent a Guidelines range of 70-87 months: (1) movant would have a lower criminal
23   history category; (2) movant's relevant conduct would be limited; (3) a maximum two-level
24   increase for role in the offense would apply instead of the four-level increase imposed; (4) no
25   two-level increase for maintaining a place would be applied; and (5) the judge could consider
26   giving three levels off—rather than two levels agreed to by the government—for acceptance of
27   responsibility. (ECF No. 99-2, Thrift Decl., ¶¶ 17-21, 25, 31, 32.) Movant alleges he stated
28   concerns about some of the information set forth as the factual basis for the plea, and wanted it to

be changed, but Mr. Brace promised the information about which movant was concerned would not impact the sentence imposed.[4] (Id., ¶ 18.) Movant further alleges Mr. Brace told him the government would withdraw the agreement if movant did not accept it without delay or if movant required more time to consider. (Id., ¶ 20.)

On June 3, 2016, movant appeared in court for his change of plea hearing. (ECF No. 93.) The court began the hearing stating the court had received a letter from movant dated May 26, 2016. (ECF No. 93 at 2.) The court asked Mr. Brace about the letter, and the following exchange occurred:

> MR. BRACE: Your Honor, this letter was dated May 26. Kendall told me, in a letter to me, that he wrote you on the 29th asking you to disregard this letter, that everything in our relationship is fine, and he wanted me to continue in his representation.
>
> THE COURT: I didn't receive his May 29th letter.
>
> MR. BRACE: Okay. Apparently it got sent out Tuesday morning, the 31st.
>
> THE COURT: He's got complaints in this letter, and he has indicated he may want to represent himself. When you say "disregard it," what should I do with it?
>
> MR. BRACE: Mr. Thrift can tell you himself. He wants you to disregard the letter.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Counsel, what should I do with the letter?
>
> MR. LEE: Your Honor, I have not seen the letter.
>
> THE COURT: Mr. Brace, what should I do with this letter?
>
> MR. BRACE: Mr. Thrift wants you to return it to him, if that's appropriate.
>
> THE COURT: If he wants it back, I can give it to him, but we're going to reflect in the minutes that he told me that he is withdrawing his letter he wrote me dated May 26th, 2016, and that it was returned to him pursuant to his request at this hearing.

////

---

[4] Specifically, according to movant, "despite the inclusion of the 1,267 plants seized from Martino's property, [Mr. Brace] said it could not be attributed to me. He emphasized that my Base Offense Level calculation of Level 24 would not be impacted by either the plants or processed marijuana seized from Zahn's car." (ECF No. 99-2, Thrift Decl., ¶ 7.)

11

1     MR. BRACE: Thank you, Your Honor.

2     (Letter given back to the defendant.)

3 (ECF No. 93 at 3-4.)

4     According to movant, he agreed to withdraw the May 26 letter only because Mr. Brace threatened that if he did not write a second letter and stay silent about his concerns at the change of plea hearing, then the agreement exposing him to a maximum sentence of 87 months would be placed in jeopardy. (ECF No. 99-2, Thrift Decl., ¶ 22.) According to movant, had he known his Guidelines exposure was double the 70-87 months promised, he would not have agreed to plead guilty and instead would have exercised his right to a trial. (Id.) According to movant, while he was willing to enter the agreement based on Mr. Brace's promises and assurances pertaining to sentence consequences, he also felt compelled to accept the offer because he believed counsel was unprepared to competently represent him at trial. (Id., ¶ 21.)

    In response, the government argues movant fails to identify what witnesses or evidence would have impacted his case, as pertaining to counsel's alleged failure to investigate and interview witnesses. (ECF No. 136 at 26.) The government also argues the court should reject movant's claim that he was forced to choose between accepting the Plea Agreement and proceeding to trial with unprepared counsel, because movant could have given up his speedy trial demand, requested a continuance, and asked the court for a new attorney. (Id. at 22-23.)

    Movant responds that he did not want to waive his speedy trial rights because the government "kept filing more charges" as reflected by the Superseding Indictment filed shortly after Mr. Brace was appointed. (ECF No. 140-1 at 2, Thrift Decl. 2, ¶ 7.) Movant further argues the record demonstrates Mr. Brace failed to counsel him on the inadvisability of exercising speedy trial rights under the circumstances. (ECF No. 140 at 18.) In addition, movant alleges he did not believe he could waive time at that point and request a continuance to allow for further consideration because Mr. Brace had advised the court would not accept the Plea Agreement providing for a sentence between 70-87 months if movant showed concerns about his representation or hesitation to accept the agreement. (Id.)

////

The government argues movant's claim of being promised a specific sentence is inconsistent with the record, because the written plea agreement advised that no one, including defense counsel, could make a binding prediction or promise regarding the sentence. (ECF No. 136 at 18-19.) In addition, at the change of plea hearing, movant represented that he understood he could receive a different sentence than any estimate given by counsel. (Id. at 19.)

The government contends an evidentiary hearing is unwarranted, because "[e]ven if the Court were to credit Thrift's allegations, consideration of the record as a whole demonstrates that defense counsel provided reasonable professional assistance." (ECF No. 136 at 17.) As to counsel's alleged promise of a sentence between 70-87 months, the government argues the proffered proof in the form of movant's sworn declaration, and that of his father, is "insufficient in the face of defense counsel's denial that he made such a promise of a specific sentence." (Id. at 19.) As support for "defense counsel's denial," however, the government cites no declaration by defense counsel. Instead, the government cites a report written by an ATF Special Agent who interviewed Mr. Brace on November 25, 2020, and then summarized Mr. Brace's representations in a "Report of Investigation." (ECF No. 136-1, Declaration of Mark Giacomantonio ("Giacomantonio Decl."), Exhibit 1.)

According to Mr. Giacomantonio, Mr. Brace stated he "had a physical paper case file" for movant's case but could not locate the file. (ECF No. 136-1, Exhibit 1, ¶¶ 7, 12.) According to Mr. Giacomantonio's summary of the interview, in pertinent part,

> 14. [….] Brace said after the deadline was put into effect, THRIFT signed the plea agreement. According to Brace, THRIFT studied the sentencing guidelines for a few years and was familiar with the terms. Brace stated he covered the part of the plea agreement with THRIFT that stated the judge could do whatever they wanted in terms of the plea agreement. [….] Brace explained there were no guarantees, especially in federal cases. Brace explained in 99% of his experiences, the judge typically honored the plea agreements or made them better. According to Brace, THRIFT focused on the part of the plea agreement that allowed for a motion to [suppress]. Brace explained he went over the plea agreement with THRIFT word by word, in a very [thorough] fashion.
>
> 15. Brace explained he and THRIFT did not have a strategy for the trial. Brace noted THRIFT knew he would get convicted and then he (THRIFT) could appeal his denial of the suppression motion. Brace explained THRIFT did not believe he would receive as long of a

13

> sentence as he ended up receiving and THRIFT focused on the appeal. [….]
>
> 16. Brace noted he would retain a defense investigator in many cases, if there was something to investigate. Brace did not retain a defense investigator in THRIFT's case because there were lots of firearms and huge amounts of drugs and money. […. ¶ ….]
>
> 18. Brace detailed his interactions with THRIFT. Brace saw THRIFT several times. Brace did not believe he used a defense investigator in THRIFT's case. Brace noted THRIFT was concerned about a motion to suppress the evidence. Brace was unsure why THRIFT did not go to trial sooner. Brace stated THRIFT was confident he (THRIFT) would win. Brace explained when THRIFT's appeal [*sic*] was denied, THRIFT wanted to go to trial and requested a speedy trial. According to Brace, THRIFT wanted to get the trial over with so he could start his appeal. Brace described the government's case as pretty straight-forward. Brace described THRIFT as cocky he would win.

(ECF No. 136-1, Giacomantonio Decl., Exhibit 1, ¶¶ 14, 15, 16, 18.)

Except for the reported statements "Brace explained there were no guarantees, especially in federal cases," and "the judge could do whatever they wanted in terms of the plea agreement," there is no evidence from counsel disputing movant's assertion that counsel promised a sentence between 70-87 months if movant accepted the plea agreement.[5] The government argues counsel provided competent representation by "discuss[ing] the sentencing guidelines with the defendant, including the potential application of sentencing enhancements." (ECF No. 136 at 18.) As support, the government cites movant's own declaration, in which movant states counsel promised that by accepting the plea agreement, movant would be sentenced to between 70-87 months. (See id.) The government argues counsel's performance was within the range of competent representation, even if the prediction did not prove to be accurate, because counsel "provided the defendant with the tools to make an intelligent decision by discussing the plea agreement and the potential sentencing consequences." (Id.)

The court finds the evidence in the record, including the declarations by movant, his father, and the government's interview summary, warrant an evidentiary hearing on the issue of

---

[5] There also is no evidence disputing movant's allegation that counsel failed to provide copies of relevant discovery to movant.

14

the voluntariness of the plea.[6] Notably, according to the government's interview summary, Mr. Brace confirmed that movant received a longer sentence than he was expecting.[7] (See ECF No. 136-1, Giacomantonio Decl., Exhibit 1, ¶ 15.) In particular, the difference between movant's 188-month prison sentence and counsel's alleged promise of a sentence of 70-87 months suffices to merit an evidentiary hearing. See United States v. Chacon-Palomares, 208 F.3d 1157, 1158-60 (9th Cir. 2000) (remanding a § 2255 action for an evidentiary hearing where counsel allegedly underestimated defendant's actual sentence by 102 months and the court was confronted with conflicting affidavits);[8] United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) (evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtroom and off the record").

In order to show prejudice, movant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Frye, 566 U.S. at 148 (citing Hill, 474 U.S. at 59). The court looks to contemporaneous evidence substantiating movant's expressed preferences. Lee, 137 S. Ct. at 1967. The prejudice inquiry in this context "focuses on a defendant's decision-making." Id. What movant would have done "depends on his risk preferences and views regarding his likelihood of prevailing… at trial." United States v. Werle, 35 F.4th 1195, 1206 (9th Cir. 2022).

Here, in addition to movant's own declaration, there is contemporaneous evidence that movant was open to risks that would have come with proceeding to trial. Mr. Heiser's declaration

---

[6] A family member's declaration is not direct evidence of what Mr. Brace told movant about his sentence, but it may be circumstantial evidence supporting movant's allegations.

[7] Mr. Brace also made unsuccessful objections to the PSR and arguments at the sentencing hearing which movant argues corroborate his claim that Mr. Brace had represented to movant that the Plea Agreement exposed him to a Guidelines sentence of no more than 87 months. (See ECF No. 140 at 13, 19.)

[8] Here, there are no conflicting affidavits regarding counsel's alleged sentencing promise. However, movant's allegations contradict his statements in court and in the plea acknowledging that defense counsel could not make a binding guarantee as to the sentence he would receive. See Shah v. United States, 878 F.2d 1156, 1158-59 (9th Cir. 1989) ("Because Shah's present allegations about his conversations with defense counsel contradict Shah's previous statements in court, his credibility must be assessed.").

reflects that movant had represented he wanted to proceed to trial when initially requesting appointed counsel, and as late as May 25, 2016, which was one week prior to the date on which he signed the Plea Agreement. (See ECF No. 99-4, Heiser Decl., ¶ 11; ECF No. 67, Plea Agreement.) Mr. Brace also reportedly confirmed that movant wanted to go to trial. (ECF No. 136-1, Giacomantonio Decl., Exhibit 1, ¶¶ 15, 18.)

On the other hand, according to the government's interview summary, Mr. Brace indicated movant was mostly concerned with appealing the denial of the suppression motions in the event he entered a guilty plea. (ECF No. 136-1, Giacomantonio Decl., Exhibit 1, ¶¶ 15, 18.) As set forth, the Plea Agreement allowed movant to appeal the denial of the motions to suppress, a reservation of rights for which he needed the government's consent. See Fed. R. Crim. P. 11(a)(2). The government argues this opportunity was "all [movant] wanted all along [in negotiation of an agreement]." (ECF No. 136 at 24, 25.)

The government also argues movant fails to demonstrate prejudice because counsel negotiated a beneficial plea agreement. (ECF No. 136 at 23-24.) The parties dispute whether the sentence would have been significantly longer had movant proceeded to trial and lost.[9] (See id. at 24-25; ECF No. 140 at 20-21.) The Plea Agreement provided for dismissal of Count 2 of the Superseding Indictment—a charge carrying a ten-year mandatory minimum prison sentence—but movant ultimately received concurrent terms and a sentence well over ten years. The government argues movant would have been subject to a higher base offense level following trial and that a threat of violence enhancement or obstruction of justice enhancement could have been applied. (ECF No. 136 at 19.) Movant disputes these assertions as lacking factual support and argues instead that mitigating factors would have come out at trial showing compliance with State cannabis laws, supporting a lower quantity determination, and not supporting any increase for role in the offense. (ECF No. 140 at 21.)

////

---

[9] Movant suggests this inquiry is irrelevant to the prejudice prong because he need not show he would have obtained a better result at trial. (See ECF No. 140 at 20.) The court finds it is relevant to movant's understanding of the consequences of his guilty plea and what he risked by proceeding to trial. See Lee, 137 S. Ct. at 1967, n.3.

Had movant proceeded to trial, it is clear he would have lost the two-level acceptance of responsibility adjustment. The Ninth Circuit has rejected an argument that no rational person in a defendant's position would risk forfeiting a three-level Guidelines reduction for acceptance of responsibility by proceeding to trial. Werle, 35 F.4th at 1202 (finding the record suggested the defendant was willing to take risks).

The court finds sufficient contemporaneous evidence in the record to satisfy the prejudice prong. The court will assess credibility at an evidentiary hearing. The questions to be resolved at the hearing are (1) what advice and/or guarantees did Mr. Brace give movant prior to entry of the guilty plea, and (2) what influence, if any, did that advice and/or guarantee have on the voluntary and intelligent character of movant's plea.

## II.     Ineffective Assistance of Counsel at Sentencing

### A.     Further Standards for the IAC at Sentencing Claim

A district court imposing a sentence must consider all factors enumerated in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" Dean v. United States, 137 S. Ct. 1170, 1175; Nelson v. United States, 555 U.S. 350, 352 (2009) ("[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable"). As to such factors, defense counsel has a "duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary." Strickland, 466 U.S. at 691. A decision not to investigate "must be directly assessed for reasonableness in all the circumstances," id. at 691, because "the duty to investigate is not limitless." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citation omitted.) In the sentencing context, as in general, Strickland prejudice is shown where, but for counsel's deficient performance, there was a reasonable possibility that the result of the proceeding would have been different. See Wiggins v. Smith, 539 U.S. 510, 535 (2003) (finding prejudice where counsel failed to discover and present powerful mitigating evidence in the form of prior abuse defendant suffered).

////

////

**B.     Movant's Claim of IAC at Sentencing**

Movant alleges Br. Brace made weak and unsupported arguments in objecting to Guidelines calculations and failed to present substantial mitigating information critical to determining the sentence. (ECF No. 99-1 at 52.) Movant asserts the court may tailor the remedy to order a new sentencing hearing if the court finds ineffective assistance of counsel pertaining to the sentence. (ECF No. 99-1 at 55.)

Specifically, movant argues the minimal references made in the PSR to his personal history, background, and military service left the court without information critical to determining the sentence. (ECF No. 140 at 27-28.) Movant argues counsel failed to discover and present significant personal history and background information in the form of "history of abuse and resulting substance abuse and mental health issues," and military service commendations. (ECF No. 140 at 27.) Movant supports these arguments with (1) an evaluation prepared by forensic and clinical neuropsychologist, Amanda Gregory, Ph.D., evidencing severe chronic exposure to abuse and trauma during childhood and adolescence, resulting in Mr. Thrift suffering from symptoms of PTSD, Obsessive Compulsive Disorder, and anxiety (ECF No. 99-6, Declaration of Amanda Gregory, Ph.D.); (2) movant's certificate of discharge from active duty reflecting awards including "Meritorious Unit Commendation, National Defense Service Medal, Meritorious Mast, [and] Rifle Expert Badge (2nd Award)," which movant asserts demonstrate his exemplary and atypical military service (ECF No. 99-2, Thrift Decl., ¶ 30 & Attachment 2); and (3) a declaration by the non-lawyer sentencing consultant hired by Mr. Brace who states Mr. Brace gave him limited time to prepare objections to the PSR calculations which the consultant thought would be reviewed, edited and supplemented by Mr. Brace, but which instead were filed without substantive changes (ECF No. 99-5, Declaration of Robert Storey).

Movant further alleges he gave Mr. Brace information to investigate that would have absolved him of responsibility for the marijuana plants seized from the Steward Ranch Road property (1,267 plants) as relevant conduct in the base offense calculations. (ECF No. 140-1, Thrift Decl. 2, ¶ 5.) According to movant, upon receiving a copy of the draft PSR, he was shocked by the Guideline calculations, but was assured that the preliminary calculations made by

18

1    Probation department were incorrect, and that the Judge would agree with those promised by
2    defense counsel. (ECF No. 99-1, Thrift Decl., ¶ 25.) According to movant, Mr. Brace did not
3    provide him with a copy of the final PSR prior to the sentencing hearing. (Id., ¶ 26.)
4        The government argues, in response, there is no basis to believe counsel's actions were
5    outside the bounds of effective representation. (ECF No. 136 at 28.) The government argues the
6    sentencing court was at least generally aware of the factors in mitigation now raised by movant, if
7    "not in the detail desired," because references to movant's military service and troubled
8    childhood were included in the PSR. (Id. at 29 (citing ECF No. 74 at ¶ 48-58, 67).) The
9    government argues movant has failed to demonstrate how counsel could have made significantly
10   better objections or arguments, and therefore failed to show deficient performance or prejudice
11   pertaining to the sentence. (Id.)

       **C.**    **Plea Waiver**

13       The parties dispute whether movant's claim of ineffective assistance of counsel at
14   sentencing is barred by movant's plea waiver of collateral attack under the law of the Ninth
15   Circuit. (See ECF No. 136 at 26-27; ECF No. 140 at 24-25.) Movant additionally argues (1)
16   under prevailing legal standards, independent counsel should have been offered to explain if
17   movant was forfeiting the right to assert ineffective assistance of counsel; and (2) if the court
18   finds a valid waiver, then it should not be enforced because a miscarriage of justice has been
19   shown. (ECF No. 99-1 at 34-35; ECF No. 140 at 25.)
20       In the Ninth Circuit, when a defendant knowingly and voluntarily waives the right to
21   appeal his sentence, he also waives the right to argue ineffective assistance of counsel at
22   sentencing on direct appeal. United States v. Nunez, 223 F.3d 956, 959 (9th Cir. 2000); compare
23   In re Sealed Case, 901 F.3d 397, 399 (D.C. Cir. 2018) (rejecting other circuits' views to hold that
24   "appellant's generic appeal waiver did not encompass a claim that his attorney provided him
25   constitutionally ineffective assistance at sentencing"). The Ninth Circuit has not held that a
26   waiver of a § 2255 motion is also an implicit waiver of any claim of ineffective assistance of
27   counsel regarding the sentence, but several district courts have so concluded. See, e.g., United
28   States v. Fernandez-Mendoza, Nos. CR 11-355-PHX-JAT, CV 12-170-PHX-JAT (LOA), 2013

WL 4431029, at *5 (D. Ariz. Aug. 16, 2013) (citing Williams v. United States, 396 F.3d 1340, 1342 (1st Cir. 2005)); United States v. Ramirez–Jimenez, No. 2:08-cr-0509 MCE KJN, 2013 WL 2150032, at *4 (E.D. Cal. May 16, 2013); but see Robledo-Soto v. United States, No. 1:11-CR-00328-LJO, 2012 WL 5396395, at *2 (E.D. Cal. Nov. 2, 2012) (finding the § 2255 waiver in the defendant's plea agreement did not bar a claim that counsel failed to investigate and present mitigating evidence at sentencing because the plain language of the waiver did not preclude an ineffective assistance of counsel claim).

If the collateral attack waiver in movant's Plea Agreement was involuntary, then the ineffective assistance of counsel at sentencing claim is not barred. See Abarca, 985 F.2d at 1014; Lampert, 422 F.3d at 871. If the entire Plea Agreement was involuntary, then the court would not necessarily reach the merits of the sentencing claim of ineffective assistance. In light of the issues to be resolved at the evidentiary hearing, the issue of the collateral attack waiver and/or the merits of movant's sentencing claim of ineffective assistance of counsel will be reached after the evidentiary hearing, if appropriate.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED:

1. The court grants an evidentiary hearing on movant's claim that ineffective assistance of counsel rendered the plea and/or collateral attack waiver in the plea agreement involuntary.

2. This matter is set for status conference to take place via videoconference on December 2, 2022, at 10:00 a.m., before the undersigned. The parties shall be prepared to schedule the matter for evidentiary hearing and to discuss the logistics and timeline for the evidentiary hearing.

3. On or before November 18, 2022, counsel for the parties shall meet and confer regarding the following: (1) the amount of time needed to prepare for the evidentiary hearing, (2) whether either party will seek to conduct additional discovery, and (3) any additional matters relevant to the evidentiary hearing.

Dated:  November 1, 2022

DLB7
thri0308.2255.hrg

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE