1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No.  2:14-cr-0308 DJC DB P

12                  Respondent,

13          v.                               FINDINGS AND RECOMMENDATIONS

14    KENDALL GRANT THRIFT,

15                  Movant.

16

17          Movant, Kendall Thrift, proceeds through counsel with a motion to vacate, set aside, or

18    correct his sentence pursuant to 28 U.S.C. § 2255.[1] In 2016, movant pleaded guilty to marijuana

19    related offenses, money laundering, and a firearms offense, for which he was sentenced to a 188-

20    month term of imprisonment on January 6, 2017. Movant now seeks post-conviction relief

21    claiming his trial counsel rendered ineffective assistance in connection with the plea and

22    sentencing. As to the plea, movant claims counsel performed deficiently in advising him his

23    applicable Guidelines would be 70-87 months, where movant was ultimately sentenced within his

24    actual Guidelines range to a 188-month term of imprisonment. Upon careful consideration of the

25    evidence and the applicable law, the undersigned recommends movant's § 2255 motion be

26    granted.

27    _____

28    [1] For statistical purposes, this motion was assigned the following civil case number: No. 2:20-cv-
00039 DJC DB P.

                                              1

1

## I.      Procedural Background

2       On June 3, 2016, movant pleaded guilty to five counts in the Superseding Indictment

3  (ECF No. 49): conspiracy to distribute, manufacture, and possess with intent to distribute

4  marijuana; possession with intent to distribute marijuana; prohibited person in possession of

5  firearms; money laundering; and conspiracy to launder monetary instruments. (ECF No. 67.)

6       In exchange for movant's guilty plea, the government agreed to dismiss count two,

7  charging manufacture of marijuana. (ECF No. 7 at 6.) The government also agreed to recommend

8  a two-level reduction in offense level for acceptance of responsibility and a sentence within the

9  applicable Sentencing Guidelines ("Guidelines") range as determined by the court. (Id. at 7.)

10      Movant's plea agreement provided there was no "binding prediction or promise regarding

11 the sentence," "sentencing is a matter solely within the discretion of the Court," and the court

12 could impose "any sentence it deems appropriate up to and including the maximum." (ECF No.

13 67 at 2.) In addition, the following exchange occurred during entry of movant's guilty plea:

14              THE COURT:  Do you understand that the sentence you receive may
                be different from any estimate your attorney may have given you?

15
                THE DEFENDANT:  Yes, sir.

16

17 (ECF No. 93 at 11.)

18      As part of the plea agreement, movant waived his right to appeal—except as to the denial

19 of the motions to suppress—unless the government appealed or the sentence imposed was in

20 excess of the statutory maximum. (ECF No. 67 at 10-11.) The plea agreement further stated,

21 "regardless of the sentence the defendant receives, the defendant also gives up any right to bring a

22 collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of

23 the guilty plea, conviction, or sentence, except for non-waivable claims." (Id. at 11.)

24      On January 6, 2017, the court sentenced movant at the high end of his Guidelines range to

25 a 188-month term of imprisonment. The following concurrent sentences were imposed: 188

26 months for the conspiracy count (count one), 188 months for possession of marijuana with intent

27 to distribute count (count three); 120 months on the firearms count (count four); and 120 months

28 on two money laundering counts (counts five and six). (ECF No. 83, 87.)

1    The court entered judgment on January 17, 2017. (ECF No. 87.) Movant unsuccessfully

2  appealed the denial of suppression motions litigated prior to entry of the plea. (ECF Nos. 86, 88,

3  95, 96.)

4    Movant filed the instant motion to vacate, set aside, or correct his sentence under 28

5  U.S.C. § 2255 on January 6, 2020. (ECF No. 99.) Therein, movant claims he was coerced to plead

6  guilty by his counsel's promises and failure to prepare for trial. Movant also claims he received

7  ineffective assistance of counsel at sentencing.

8    The government disputes movant's claim of coercion and argues movant failed to

9  demonstrate prejudice even if counsel performed deficiently. (ECF No. 136 at 18-26.) [2] The

10  government asserts movant's claim of ineffective assistance of counsel at sentencing is barred by

11  the collateral attack waiver in the plea agreement. (Id. at 27.)

12    On October 31, 2023, the court held an evidentiary hearing on the issue of the voluntary

13  and intelligent character of movant's plea agreement. (ECF Nos. 162, 163.) Movant filed a post-

14  hearing brief on December 18, 2023. (ECF No. 172.) Respondent filed a post-hearing brief on

15  December 18, 2023. (ECF No. 173.)

16    **II.    Applicable Law**

17      **A.    Motions brought under 28 U.S.C. § 2255**

18    "A prisoner in custody under sentence of a court established by Act of Congress claiming

19  the right to be released upon the ground that the sentence was imposed in violation of the

20  Constitution or laws of the United States... may move the court which imposed the sentence to

21  vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Under § 2255, the federal

22  sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in

23  violation of the Constitution or laws of the United States. Davis v. United States, 417 U.S. 333,

24  344-45 (1974); United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief,

25  movant must demonstrate the existence of an error of constitutional magnitude that had a

26  substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v.

27

28  [2] Citations to page numbers in the parties' briefing refer to the page number at the top of the
document assigned by CM/ECF.

3

1   Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058

2   (9th Cir. 2003) ("Brecht's harmless error standard applies to habeas cases under section 2255, just

3   as it does to those under section 2254.") Relief is warranted only for "a fundamental defect which

4   inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346.

5               **B.      Strickland Standard**

6          The Sixth Amendment right to the effective assistance of counsel extends to the plea-

7   bargaining process, including the decision whether to accept or reject a plea offer. See Lafler v.

8   Cooper, 566 U.S. 156, 162 (2012); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). The two

9   components to an ineffective assistance of counsel claim are deficient performance and prejudice.

10  See Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (citing Strickland v. Washington, 466

11  U.S. 668, 687 (1984)).

12         Deficient performance means representation that "fell below an objective standard of

13  reasonableness[.]" Stanley, 633 F.3d at 862 (citing Strickland, 466 U.S. at 688). There is a

14  "strong presumption" that counsel rendered adequate assistance and made all significant decisions

15  in the exercise of reasonable professional judgment. Id. "A fair assessment of attorney

16  performance requires that every effort be made to eliminate the distorting effects of hindsight, to

17  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

18  counsel's perspective at the time." Carrera v. Ayers, 670 F.3d 938, 943 (9th Cir. 2011).

19         Defense counsel must, "at a minimum, conduct a reasonable investigation enabling…

20  informed decisions about how best to represent [the] client." Hendricks v. Calderon, 70 F.3d

21  1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994)

22  (internal citation and quotations omitted)). To prevail on a claim based on counsel's

23  representations, movant must demonstrate counsel's "gross error" by counsel. Turner v. Calderon,

24  281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)).

25  Movant must show the advice received from counsel was "so incorrect and so insufficient that it

26  undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'"

27  Turner, 281 F.3d at 880 (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)).

28  ////

4

To establish deficient performance pertaining to a sentencing prediction, specifically, movant must demonstrate more than a "mere inaccurate prediction[.]" Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986). Movant must demonstrate counsel "grossly mischaracterized" the likely outcome of a plea bargain. Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004); see also Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990). The relevant question as to counsel's performance is "not on whether a court would retrospectively consider counsel's advice to be right or wrong," but instead, "whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771.

Strickland's prejudice prong is met if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In cases where a defendant claims ineffective assistance led to the acceptance of a plea offer instead of proceeding to trial, the defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Missouri v. Frye, 566 U.S. 134, 148 (2012) (citing Hill, 474 U.S. at 59). Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, such a determination will "depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Hill, 474 U.S. at 59.

"Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies[.]" Lee v. United States, 582 U.S. 357, 369 (2017). Courts must, instead, look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id.; see Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004) ("Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial.").

////

////

////

5

1    **III.    Discussion**

2         **A.    The Parties' Arguments**

3         Movant claims counsel rendered ineffective assistance during the plea-bargaining process[3]

4    by promising his exposure under the Guidelines was 70-87 months, when his actual exposure

5    under the plea agreement was 151-188 months, as reflected in the Presentence Investigation

6    Report ("PSR"). (ECF No. 99-2, Thrift Decl., at ¶¶ 19, 21; ECF No. 74 at 4, PSR.) Movant also

7    claims counsel rendered ineffective assistance during the plea-bargaining process by failing to

8    prepare, failing to communicate, and failing to discover, investigate and present exculpatory

9    information. (ECF No. 99-1 at 39-48.)

10        The government argues movant fails to show what witnesses or evidence would have

11   impacted his case. (ECF No. 136 at 26.) The government argues movant could have given up his

12   speedy trial demand, requested a continuance, and asked the court for a new attorney, and thus

13   was not forced to choose between accepting the plea agreement and proceeding to trial with

14   unprepared counsel. (Id. at 22-23.)

15        The government argues movant's claim of being promised a specific sentence is

16   inconsistent with the record, because the written plea agreement advised there was no binding

17   prediction regarding the sentence. (ECF No. 136 at 18-19.) In addition, at the change of plea

18   hearing, movant represented that he understood he could receive a different sentence than any

19   estimate given by counsel. (Id. at 19.) The government argues counsel's performance was within

20   the range of competent representation, even if counsel's prediction did not prove to be accurate,

21   because counsel "provided the defendant with the tools to make an intelligent decision by

22   discussing the plea agreement and the potential sentencing consequences." (Id. at 18-19.)

23   ////

24   ////

25   ─────────────────────────

26   [3] The parties agree movant's ineffective assistance claim challenging counsel's performance
     during plea negotiations is not waived or barred by any waiver in his plea agreement. See
     Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005) (waivers of appellate rights or the
27   right to collateral attack are unenforceable with respect to ineffective assistance of counsel claims
     challenging the voluntariness of the waiver itself); see also United States v. Abarca, 985 F.2d
28   1012, 1014 (9th Cir. 1993); Davies v. Benov, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017).

1

**B.      Factual Background**

2       Movant initially retained counsel and requested an appointed attorney when he ran out of

3   funds. (ECF No. 99-2, Declaration of Kendall Thrift ("Thrift Decl."), ¶ 3.) Movant advised the

4   Criminal Justice Act ("CJA") Panel Administrator, Kurt Heiser, that he intended to exercise his

5   right to trial, did not want to waive his speedy trial right, and hoped an attorney would be selected

6   with sufficient time to prepare his case within those limits. (ECF No. 99-2, ¶ 4; ECF No. 99-4,

7   Heiser Decl., ¶¶ 5-6.) Mr. Heiser's inquiry to Mr. Brace indicated "client wants to go to trial w/o

8   further delay." (ECF No. 99-4, Heiser Decl., ¶ 5.)

9       Former attorney Danny Brace[4] was appointed to represent movant on March 24, 2016.

10   (ECF No. 47.) At a status conference on the date of appointment, a trial confirmation hearing was

11   set for April 15, 2016, and jury trial was set on May 24, 2016. (ECF No. 48.)

12       The government filed a Superseding Indictment on April 14, 2016, and movant was

13   arraigned on April 19, 2016. (ECF Nos. 49, 53.) The trial confirmation hearing was reset to May

14   13, 2016. (ECF No. 56.)  The court ordered motions in limine to be filed on May 24, 2016, and

15   the parties confirmed the trial date of June 14, 2016. (See ECF Nos. 58, 59, 91 at 2:13-23.) Mr.

16   Brace stated on the record on April 14, 2016 that the defense was "in the process of receiving a

17   lot more discovery" which "appears to go back a couple of years…" and indicated he would "be

18   able to evaluate that with [his] client and be ready to go forward." (ECF No. 91 at 2.)

19       However, Mr. Brace allegedly failed to provide movant with requested copies of

20   discovery, which movant claims forced him to decide whether to accept or reject the proposed

21   agreement without the benefit of full knowledge of the evidence. (ECF No. 99-1 at 14; ECF No.

22   99-2, Thrift Decl., ¶ 12.) Mr. Brace allegedly blamed his failure to produce copies of discovery

23   on his own negligence, insufficient printing capabilities, and what he deemed relevant for movant

24   to review. (Id.)

25       Movant claims he had inadequate communication and contact with Mr. Brace throughout

26   the proceedings. (ECF No. 99-2, Thrift Decl., ¶ 9.) Movant recalls Mr. Brace visiting him on two

27

28

---

[4] State Bar disciplinary charges were filed against Mr. Brace on October 5, 2017. He was disbarred on October 27, 2018. See https://apps.calbar.ca.gov/attorney/Licensee/Detail/114466.

occasions prior to the presentation of the plea agreement, including the initial introduction and once thereafter, on or about May 21, 2016, for a total of about 1.5 hours. (Id.) Movant's attempts to reach Mr. Brace were mostly unsuccessful. (Id.) On several occasions, movant asked his father to relay messages to Mr. Brace. (Id., ¶ 10.) Movant's father would relay messages to Mr. Brace but also found it difficult to reach counsel. (ECF No. 99-3, Declaration of Kevin Thrift ("Kevin Thrift Decl."), ¶ 5.)

Approximately three times prior the plea, movant contacted the CJA Panel Administrator, Mr. Heiser, expressing frustration and concern over his inability to communicate with Mr. Brace and about the lack of preparation being conducted on his case. (ECF No. 99-2, Thrift Decl., ¶ 10; ECF No. 99-4, Heiser Decl., ¶¶ 7-10.) On March 28, May 20, and May 25, 2016, Mr. Heiser relayed information to Mr. Brace upon receiving complaints from movant about not being able to reach counsel. (ECF No. 99-4, Heiser Decl., ¶¶ 3, 7-11, 13.)

Movant claims he provided Mr. Brace with a list of witnesses who could help in his defense. (ECF No. 140-1, Thrift Decl. 2, ¶ 5.) Movant also informed Mr. Brace he had experienced childhood trauma, exasperated by military service, and that he suffered from Post Traumatic Stress Disorder ("PTSD"). (Id.) Mr. Brace allegedly advised the information was not relevant or helpful. (Id., ¶¶ 29, 30.)

The record indicates that on May 20, 2016, Mr. Brace was simultaneously representing another defendant in a murder trial. (ECF No. 99-2, Thrift Decl., ¶ 6; ECF No. 99-4, Heiser Decl, ¶ 10.) Movant argues Mr. Brace's duties for the simultaneous trial greatly restricted his ability to meet and communicate with movant and work on his defense. (ECF No. 99-2, Thrift Decl., ¶ 6.) Mr. Brace did not make any known attempts to contact movant's potential witnesses, obtain documents to support the defense case, or impeach government witnesses and evidence. (Id., ¶ 14.)

As the case proceeded to trial, the government filed three motions in limine on May 24, 2016. (ECF Nos. 61, 62, 63.) Responses to the government's motions in limine were due on May 31, 2016. (See ECF No. 58.) Mr. Brace did respond to the motions in limine filed by the government and did not file any motions in limine on movant's behalf.

Mr. Brace allegedly assured movant he was requesting resources necessary for trial preparation, but he did not request any ancillary funds for an investigator, expert, or consultant for any pre-trial or pre-plea purpose. (ECF No. 99-2, Thrift Decl., ¶¶ 12-13.) On May 25, 2016, after receiving a complaint from movant about not being able to reach counsel, Mr. Heiser emailed Mr. Brace to relay information. (ECF No. 99-4, Heiser Decl., ¶ 11.) In a follow-up email on May 26, 2016, Mr. Heiser suggested that Mr. Brace put in a request for investigator funds "since it is headed to trial" and offered assistance with the "really easy" procedure. (Id.).

Also on May 26, 2016, movant wrote a letter to Judge Burrell. (ECF No. 99-2 at 13-16, Thrift Decl., Exhibit 1.) Movant's letter to Judge Burrell indicated Mr. Brace had been unable to meet with movant due to the simultaneous murder trial, that movant had not been provided with discovery materials he requested, and that Mr. Brace had not spent any significant time with movant on the case, such that movant felt he had effectively been deprived of counsel. (Id.) Movant expressed doubt that Mr. Brace could competently represent him at trial and suggested he would be better off representing himself with standby counsel. (Id.) Within a few days of movant writing this letter, Mr. Brace visited movant and allegedly coerced him to accept the plea agreement through threats and false representations regarding sentencing consequences. (Id., ¶¶ 17-22.)

Movant claims Mr. Brace promised him his exposure under the Guidelines was 70-87 months, when his actual exposure under the plea agreement was 151-188 months. (ECF No. 99-1 at 39.) Mr. Brace allegedly made the same representation regarding sentence exposure to movant's father. (ECF No. 99-3, Keven Thrift Decl., at ¶ 8 ("I spoke directly to Mr. Brace who told me that my son would receive a sentence of imprisonment of 5 ½ to 7 years if he accepted the plea agreement.")

Movant claims counsel made the following specific misrepresentations in order to represent a Guidelines range of 70-87 months: (1) movant would have a lower criminal history category; (2) movant's relevant conduct would be limited; (3) a maximum two-level increase for role in the offense would apply instead of the four-level increase imposed; (4) no two-level increase for maintaining a place would be applied; and (5) the judge could consider giving three

1   levels off—rather than two levels agreed to by the government—for acceptance of responsibility.

2   (ECF No. 99-2, Thrift Decl., ¶¶ 17-21, 25, 31, 32.)

3        Mr. Brace allegedly dismissed movant's concerns about some of the information set forth

4   as the factual basis for the plea, promising it would not impact the sentence. (ECF No. 99-2,

5   Thrift Decl., ¶ 18.) Specifically, "despite the inclusion of the 1,267 plants seized from Martino's

6   property,[5] [Mr. Brace] said it could not be attributed to me. He emphasized that my Base Offense

7   Level calculation of Level 24 would not be impacted by either the plants or processed marijuana

8   seized from Zahn's car." (Id., ¶ 7.) Mr. Brace told movant the government would withdraw the

9   agreement if movant did not accept it without delay. (Id., ¶ 20.)

10        On June 1, 2016, movant signed the written and conditional plea agreement pursuant to

11   Rule 11(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 67.) Under its terms, movant

12   pleaded guilty to Counts One, Three, Four, Five, and Six in the Superseding Indictment and

13   Count Two was dismissed. (See Id. at §§ IIA and IIIA.) Movant retained the right to appeal the

14   denial of the motions to suppress. (Id. at § I.A and VII.) The government agreed to recommend a

15   sentence within the Guidelines range, as determined by the Court, and agreed to recommend a

16   two-level reduction for acceptance of responsibility. (Id. § III.B.2.) The plea agreement did not

17   include the Guidelines calculations. According to movant, while he was willing to enter the

18   agreement based on Mr. Brace's promises and assurances regarding sentence consequences, he

19   also felt compelled to accept the offer because he believed counsel was unprepared to

20   competently represent him at trial. (Id., ¶ 21.)

21        Movant appeared in court for his change of plea hearing on June 3, 2016. (ECF No. 93.)

22   The court began the hearing stating the court had received a letter from movant dated May 26,

23   2016. (ECF No. 93 at 2.) The court asked Mr. Brace about the letter, and the following exchange

24   occurred:

25        MR. BRACE: Your Honor, this letter was dated May 26. Kendall
          told me, in a letter to me, that he wrote you on the 29th asking you

26
    _____

27   [5] This rural property in Humboldt County was co-owned by movant and Martino, a co-
     conspirator. (See ECF No. 74 at 7, PSR.) At the evidentiary hearing that took place on this matter,
     this property was also referred to as the Stewart Ranch Road property, or the property in
28   foreclosure.

to disregard this letter, that everything in our relationship is fine, and he wanted me to continue in his representation.

THE COURT: I didn't receive his May 29th letter.

MR. BRACE: Okay. Apparently it got sent out Tuesday morning, the 31st.

THE COURT: He's got complaints in this letter, and he has indicated he may want to represent himself. When you say "disregard it," what should I do with it?

MR. BRACE: Mr. Thrift can tell you himself. He wants you to disregard the letter.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, what should I do with the letter?

MR. LEE: Your Honor, I have not seen the letter.

THE COURT: Mr. Brace, what should I do with this letter?

MR. BRACE: Mr. Thrift wants you to return it to him, if that's appropriate.

THE COURT: If he wants it back, I can give it to him, but we're going to reflect in the minutes that he told me that he is withdrawing his letter he wrote me dated May 26th, 2016, and that it was returned to him pursuant to his request at this hearing.

MR. BRACE: Thank you, Your Honor.

(Letter given back to the defendant.)

(ECF No. 93 at 3-4.) Movant entered his guilty plea and the court subsequently imposed sentence at the high end of his Guidelines range to a 188-month term of imprisonment. (ECF No. 67, 83, 87.)

Movant now claims he agreed to withdraw the May 26 letter only because Mr. Brace had threatened the agreement exposing him to a maximum sentence of 87 months would be placed in jeopardy if he did not write a second letter and stay silent about his concerns. (ECF No. 99-2, Thrift Decl., ¶ 22.) According to movant, had he known his Guidelines exposure was not 70-87 months as promised, he would not have agreed to plead guilty and instead would have exercised his right to a trial. (Id.)

////

11

1     **C.     Evidentiary Hearing**

2          On October 30 and 31, 2023, the undersigned held an evidentiary hearing on the issue of

3     the voluntariness of movant's plea. The witnesses included movant, his father, Mr. Brace, the

4     CJA Panel Administrator, and other attorneys who represented movant either for litigation of the

5     suppression motions or for the appeal.

6     **1.     Movant's Testimony**

7          Based on advice from his initial attorneys at the Virga Law Firm, movant believed he had

8     a "good shot" to win the suppression motions. (ECF No. 168 at 104.) When the motions to

9     suppress were denied in about January of 2016, he decided to go to trial. (Id. at 129.) Because he

10    could no longer retain counsel, Mr. Brace was appointed to represent him. (Id.)

11         Movant had two brief meetings with Mr. Brace over the course of several months prior to

12    the time Mr. Brace brought him the plea agreement. (ECF No. 168 at 107-09.) At the end of May

13    2016, Mr. Brace brought a copy of the plea agreement. (Id. at 10.)

14         Mr. Brace promised movant he was looking at 70 to 87 months under the plea

15    agreement's terms. (ECF No. 168 at 119.) Mr. Brace promised movant the applicable Guidelines

16    range was 70-87 months.[6] (Id.)

17         Movant conveyed to Mr. Brace that preservation of the appeal was an important factor.

18    (ECF No. 168 at 128.) He never asserted that all he cared about was preserving his right to appeal

19    denial of the motions to suppress. (Id. at 108.) He denied ever wanting to proceed to a perfunctory

20    trial to preserve appeal rights and denied that he made any such indications to Mr. Brace. (Id. at

21    127.)

22         Movant identified witnesses relevant to the manufacture charge against him. (ECF No.

23    168 at 135.) Movant asked Mr. Brace to investigate and speak to a witness who could testify he

24    was not involved with the plants on the property in foreclosure on Stewart Ranch Road. (Id. at

25    111, 138.) Movant wanted Mr. Brace to investigate what happened to the property after it went

26

27    ───────────────
      [6] Movant's father also testified, consistent with his declaration, that Mr. Brace represented
28    movant's sentence would be between five and seven years under the Guidelines. (ECF No. 168 at
      70.)

into foreclosure. (Id. at 143.) To movant's knowledge, Mr. Brace did not conduct any investigation.[7] (Id. at 113, 136.)

As to the cannabis located in his home in El Dorado Hills, movant asked Mr. Brace to re-weigh the cannabis and weigh the packaging. (ECF No. 168 at 111-12, 138-39.) Mr. Brace did not do so. (Id. at 24, 32.)

Movant attempted to review the discovery for his case. (ECF No. 168 at 114-15.) The copy of discovery he received was missing several pages which he requested from Mr. Brace. (Id. at 114-15.) Movant never received those pages. (Id.)

Movant wrote the letter to Judge Burrell dated May 26, 2016, out of concern about the missing discovery and Mr. Brace's lack of investigation and lack of preparation for trial. (ECF No. 168 at 114, 116.) On May 27, 2016, Mr. Brace visited movant with the plea agreement. (Id. at 117.) Mr. Brace promised movant his Guidelines calculation would be 70 to 87 months. (Id. at 119.) Based on Mr. Brace's representations, movant believed he would be criminal history Category II. (Id. at 122.) The plea agreement provided for the Guidelines to be calculated by the judge, but movant did not remember reading that part because his focus was on the exhibit containing the factual basis for entry of the plea. (Id. at 141-42.)

Movant raised concerns about Exhibit A to the plea agreement to Mr. Brace, and specifically, about the listed plants. (ECF No. 168 at 117-18, 120.) Mr. Brace indicated "it was not relevant conduct," which movant understood to mean it would not apply to him. (Id. at 120.)

Movant did not raise his concerns about Exhibit A to the plea agreement at the change of plea hearing. (ECF No. 168 at 141.) This was because Mr. Brace had said the agreement would not go through if he raised objections. (Id. at 122.) Movant accepted the plea agreement to preserve his appellate rights and because of the promise that his exposure under the Guidelines was 70 to 87 months. (Id. at 142-43.)

Movant learned the government was recommending a sentence of 188 months when he received the draft PSR. (ECF No. 168 at 124.) Neither Mr. Brace nor the sentencing consultant

---

[7] Mr. Heiser's testimony confirmed that no request was made for funds for pretrial investigation based on CJA vouchers. (ECF No. 168 at 57.)

hired by Mr. Brace discussed the draft PSR with movant. (Id.) During movant's probation interview, Mr. Brace was distracted, on his phone, admonished by the probation officer, and later fell asleep. (Id. at 123-24.) Mr. Brace did not ask movant for information regarding accommodations earned during military service or his diagnosed PTSD. (Id. at 125.)

Movant thought he had a good chance to prevail, in part, if he proceeded to trial. (ECF No. 168 at 126.) He believed there were specific things the defense could have fought which would have limited his exposure. (Id. at 126.) Specifically, he thought there was a good chance to beat the manufacture charge. (Id. at 128.)

### 3.    Mr. Brace's Testimony

According to Mr. Brace, movant wanted to go to trial solely to preserve appeal of the denial of the motions to suppress. (ECF No. 168 at 13.) Movant's goal was "to go through the motions of a trial" so he could begin the appeal process, because he "knew he was going to get convicted[.]" (Id.) Mr. Brace did not recall discussing trial preparation with movant, but testified he was preparing for trial up until the plea agreement preserving appellate rights came about a few days before the trial date. (ECF No. 168 at 31.)

There were close to 800 pounds of marijuana in one-pound packages found at movant's home. (ECF No. 168 at 31-32.) Mr. Brace did not hire an expert to view this evidence. (Id. at 24.) Mr. Brace testified it would be a standard argument in every drug case to argue for removal of the packaging weight from the total weight. (Id. at 32.) In this case, though, he did not re-weigh the marijuana, hire an expert to assess the cannabis evidence, or otherwise determine the weight of the packaging because he thought "it wouldn't make a big difference, if any." (ECF No. 168 at 31-32.)

The CJA Panel Administrator had urged Mr. Brace to hire an investigator, but movant never raised any viable defenses, trial witnesses to be investigated, or mitigation evidence. (ECF No. 168 at 21, 23, 39, 42.) Mr. Brace vaguely recalled that movant had raised an issue about the 1,267 plants on the Stewart Ranch Road Property not being part of his conduct or that other people were involved. (Id. at 17, 31-32.) Mr. Brace agreed it would generally be important to investigate such a claim if movant was charged with those plants. (Id. at 18.) However, he did not

14

1   remember that issue being part of the "big picture" of the case. (Id.) He did not recall movant ever

2   asking for discovery. (Id. at 47.)

3       Mr. Brace did not file motions in limine or respond to the government's motions in

4   limine. (ECF No. 68 at 14, 16.) He did not litigate motions in limine or hire an investigator

5   because movant's trial goal was simply to preserve the right to appeal the denial of the

6   suppression motions. (Id.)

7       When Mr. Brace received the plea agreement, he had three days to get it signed. (ECF No.

8   168 at 24.) He and movant thoroughly went over every paragraph of the plea agreement. (Id. at

9   25, 40, 47.) Further drafts were prepared with some changes. (Id. at 25.) Mr. Brace did not recall

10  whether movant was concerned about the Stewart Ranch Road plants being included in the

11  factual basis for the plea agreement at this meeting. (Id.) According to Mr. Brace, movant "was

12  confident he was going to win on appeal" and his primary concern and main motivation for

13  entering the plea was preserving his appellate rights. (Id. at 25-26.)

14      Under Mr. Brace's understanding of the plea agreement, movant's Guidelines range

15  would be 70-87 months calculated from a base offense level of 24 and two-level increases for a

16  firearm and leadership. (ECF No. 168 at 26-27, 32-33, 46.) Mr. Brace told movant the judge

17  usually followed the Guidelines. (Id. at 46, 48.) Mr. Brace did not recall discussing with movant

18  the possibility of a two-level increase for maintaining a place. (Id. at 27.) Mr. Brace anticipated

19  that movant's criminal history category would be Category II. (Id. at 27-28.)

20      Mr. Brace relayed to movant his best estimate of the applicable Guidelines range at the

21  time was 70-87 months. (ECF No. 168 at 26, 33, 48-49.) Mr. Brace pointed out the paragraphs

22  that indicated the range was only an estimate and that it would be up to the Court to determine the

23  actual Guidelines range. (Id.) Movant conveyed to Mr. Brace through words and actions that he

24  understood the plea agreement. (Id. at 41.) Mr. Brace did not pressure movant to accept the plea,

25  write any letters, or hold back concerns at the change of plea hearing. (Id. at 41-42.) Mr. Brace

26  denied that he ever made a specific promise of a sentence of 70-87 months and denied that he

27  promised a sentence within a specific Guidelines range. (Id. at 45.)

28  ////

1

### 3.      Other Testimony

2       Movant's former counsel for the appeal, John Balazs, testified Mr. Brace had not provided

3   him with any files related to movant's case.[8] (ECF No. 168 at 85.) Mr. Balazs testified it would

4   not have been his general practice to ask for or receive a file from the trial attorney. (Id. at 88.)

5       Attorneys Megan Virga and Keven McKinley testified the Virga Law Firm was focused

6   on litigating suppression motions which were believed at the time to be viable. (ECF No. 168 at

7   94, 98, 100; ECF No. 169 at 32, 38, 40-41.) Mr. McKinley additionally testified it was his

8   impression at the conclusion of the representation that movant believed he could prevail at trial.

9   (ECF No. 169 at 39.)

10

### D.      Involuntary Plea/ Ineffective Assistance

11       The undersigned recommends the § 2255 motion be granted on the ground that counsel's

12   deficient representation rendered the plea involuntary. Counsel grossly misrepresented the

13   applicable sentencing consequences of the plea by advising movant his Guidelines range was 70

14   to 87 months, when movant's actual Guidelines range was 151-188 months. (See ECF No. 67 at

15   13-15, Plea Agreement; ECF No. 94 at 6, 16-17, Sentencing Transcript.) Counsel failed to

16   provide movant the necessary information to make an intelligent decision whether to accept the

17   plea or proceed to trial. Even if movant's assertion that counsel promised a specific sentence or

18   Guidelines range is contradicted by some evidence in the record, counsel's advice and

19   representation fell below the objective standard of reasonableness in this instance. See McMann,

20   397 U.S. at 771; Hill, 474 U.S. at 56.

21

### 1.      Deficient Performance

22       As set forth, deficient performance based on a sentencing prediction requires more than a

23   "mere inaccurate prediction[.]" Iaea, 800 F.2d at 865 (quoting McMann, 397 U.S. at 770)). "In

24   Iaea, [the Ninth Circuit] held that a defendant can satisfy the 'deficient performance' prong of the

25   test by showing that counsel induced him to plead guilty by presenting a 'gross

26   _____

27   [8] In initial briefing, the government submitted a report of an interview of Mr. Brace on November 25, 2020. (ECF No. 136-1, Exhibit 1, Declaration of Mark Giacomantonio.) According to Mr. Giacomantonio, Mr. Brace could not locate the "physical paper case file," and suggested he may

28   have given it to counsel for the appeal. (ECF No. 136-1, Exhibit 1, ¶¶ 7, 10, 12.)

mischaracterization of the likely outcome.'" Chacon v. Wood, 36 F.3d 1459, 1464 (9th Cir. 1994) (quoting Iaea, 800 F.2d at 865) (superceded by statute on other grounds). The Iaea court based the finding on counsel's incorrect advice that the defendant was subject to a minimum sentencing law, that there was almost no chance of his receiving an extended or life sentence, and that there was a chance of receiving probation upon a guilty plea, where instead, the defendant received three life sentences. 800 F.2d at 864. Subsequently, in Chacon, the Ninth Circuit held counsel's advice the defendant would serve only three months in jail if he pleaded guilty, when ten years imprisonment was imposed, clearly alleged a gross mischaracterization of the likely outcome. 36 F.3d at 1464.

Gross mischaracterization is a demanding standard. "Precedent in [the Ninth Circuit] makes clear that a disparity between the predicted sentence and the actual sentence must be extreme." United States v. Nguyen, 997 F. Supp. 1281, 1289-90 (C.D. Cal. 1998) (finding 188-month sentence upon conviction at trial versus alleged prediction of 120-132 months was not a "gross mischaracterization of the likely outcome"); United States v. Garcia, 909 F.2d 1346, 1348-49 (9th Cir. 1990) (district court did not abuse discretion in refusing to allow withdrawal of guilty plea where counsel allegedly estimated sentence of 8 years and court imposed sentence of nearly 20 years); United States v. Martinez, No. 1:14-cr-00158-LJO-SKO-1, 2018 WL 5920782, at *5 (E.D. Cal. Nov. 13, 2018) (holding there was no "gross mischaracterization" where counsel allegedly predicted maximum sentence of 24 months upon entry of open plea and the defendant received 41 months).

In United States v. Manzo, the Ninth Circuit reversed the district court's denial of a § 2255 motion and remanded for further proceedings where counsel allegedly predicted 135-168 months upon entry of guilty plea, the correct Guidelines range was 292-365 months, and the court sentenced the defendant to 292 months. 675 F.3d 1204, 1208-10 (9th Cir. 2012) (holding the disparity was a gross mischaracterization). The present case is similar to Manzo in that the inaccurate sentencing prediction "was not a minor technical error, but rather it had major impact on the calculation of the discretionary Sentencing Guidelines." See id. at 1209. The Sentencing Guidelines are "the starting point and the initial benchmark" for sentencing. Peugh v. United

17

1  States, 569 U.S. 530, 536 (2013). "[A] district court may ultimately sentence a given defendant

2  outside the Guidelines range [but that] does not deprive the Guidelines of force as the framework

3  for sentencing." Id. at 542.

4          The record indicates movant understood the court was not required to impose a sentence

5  within the applicable Guidelines. Here, though, the sentencing court did not depart from the

6  applicable Guidelines and this case does not involve counsel's failure to predict what a jury or the

7  court might do. See McMann, 397 U.S. at 771 ("uncertainty is inherent in predicting court

8  decisions"); Turner, 281 F.3d at 881 ("Counsel cannot be required to accurately predict what the

9  jury or court might find, but he can be required to give the defendant the tools he needs to make

10  an intelligent decision."). Mr. Brace emphasized in his testimony he explained to movant the

11  judge usually follows the Guidelines and that counsel's best estimate of the applicable Guidelines

12  range was 70-87 months. (ECF No. 168 at 26, 33, 46-49.) Based on counsel's representations,

13  movant reasonably expected the applicable Guidelines to be 70-87 months.

14          As in Manzo, the actual Guidelines range was more than double the range predicted by

15  counsel. Moreover, here, movant's actual sentence of 188 months was more than double the high

16  end of counsel's predicted range of 70-87 months. This was a "serious error" constituting

17  deficient performance. See Iaea, 800 F.2d at 864.

18          The sentencing court relied on admissions made in the factual basis for the plea agreement

19  to determine the applicable Guidelines range. The factual basis specifically identified multiple

20  places where manufacturing and distributing cannabis had occurred. (See ECF No. 67 at 13-14.)

21  Even though the relevant information was clearly set forth in the factual basis for the plea

22  agreement, Mr. Brace failed to anticipate the likelihood of a two-level increase for maintaining a

23  place. See USSG §2D1.1(b)(12) ("If the defendant maintained a premises for the purpose of

24  manufacturing or distributing a controlled substance, increase by 2 levels."). Mr. Brace also failed

25  to anticipate a 4-level adjustment, rather than 2-level, for leadership and role in the offense, under

26  USSG §3B1.1(a). (See ECF No. 74 at 10, PSR.) See also USSG §3B1.1(a) (providing for a 4-

27  level increase where the defendant was an organizer or leader of a criminal activity that involved

28  five or more participants, or was otherwise extensive, compared to a 2-level increase where the

1   defendant was an organizer, leader, manager, or supervisor in any criminal activity not otherwise

2   extensive and without five or more participants).

3          In addition, the undersigned finds credible movant's assertion (see ECF No. 99-2, ¶¶ 7,

4   18; ECF No. 168 at 111, 138) that Mr. Brace indicated the 1,267 plants seized from the rural

5   property would not be attributed to him even though they were included in the factual basis for

6   the plea agreement. Mr. Brace testified he recalled that movant had raised an issue about these

7   plants, but Mr. Brace did not remember the issue being part of the "big picture" of the case. (See

8   ECF No. 168 at 17-18, 31-32.) These plants were significant to the case because they were

9   included to calculate movant's base offense level of 26. (See id. at 26-27.)

10         Mr. Brace estimated movant's criminal history calculation would be Category II. (ECF

11   No. 168 at 27-28.) However, movant received 2 points based on his prior misdemeanor

12   convictions sentenced in 2013, and 2 points for committing the instant offenses while still under a

13   criminal justice sentence of probation, totaling 4 points which constituted criminal history

14   Category III. (See ECF No. 74 at 11, PSR.)

15         The relevant facts to calculate movant's offense level and criminal history category were

16   both basic and known. This was not a situation where the parties were unaware of information

17   that affected movant's Guidelines calculations prior to entry of the plea. Nevertheless, counsel

18   failed to accurately calculate both movant's criminal history category and his offense level. These

19   errors led counsel to estimate movant's Guidelines range to be 70-87 months, instead of 151-188

20   months.

21         "[C]ounsel have a duty to supply criminal defendants with necessary and accurate

22   information." Iaea, 800 F.2d at 865. Considering the cumulative errors in mis-calculating

23   movant's Guidelines range, counsel performed deficiently in advising movant about the

24   consequences of the plea agreement. See Manzo, 675 F.3d at 1208; see also United States v.

25   Hanson, 339 F.3d 983, 990 (D.C. Cir. 2003) ("failure to take into account the career offender

26   provisions of U.S.S.G. § 4B1.1 - and hence to recognize that Hanson's post-plea sentencing range

27   would be 262 to 327 months rather than 121 to 151 - was constitutionally deficient"). Because the

28   agreement included a clause precluding the parties from arguing for a sentence outside the

1  Guidelines (see ECF No. 67 at 3), there was no valid argument for a sentence within the predicted

2  range. Mr. Brace's errors were not merely a failure to predict a sentence, but instead, amounted to

3  a failure to understand and communicate the consequences of the plea agreement.

4       Because of counsel's deficient representations, movant "did not get the benefit of the

5  bargain that led him to plead guilty[.]" Manzo, 675 F.3d at 1210. Movant has demonstrated

6  "gross error on the part of counsel" as to the sentencing prediction. McMann, 397 U.S. at 772.

7       Moreover, counsel made other errors and omissions that contributed to the inducement to

8  enter the plea agreement. Defense counsel must, "at a minimum, conduct a reasonable

9  investigation enabling… informed decisions about how best to represent [the] client." Hendricks,

10  70 F.3d at 1035. The undersigned finds credible movant's assertion that Mr. Brace failed to

11  provide missing discovery pages which movant requested to review. (See, e.g., ECF No. 168 at

12  114-15.) Movant's assertion is corroborated by his first letter to Judge Burrell and Mr. Brace's

13  statements at the trial confirmation hearing that extensive additional discovery was received.[9]

14  There is no credible indication that Mr. Brace otherwise conveyed the substance of the missing

15  discovery materials to movant. Due to counsel's omissions, movant was forced to decide whether

16  to accept or reject the proposed agreement without the benefit of full knowledge of the evidence.

17       In addition, a basic and reasonable investigation in this case would have included re-

18  weighing the cannabis at issue and determining the weight of the included packaging. Movant

19  testified "I asked him to weigh the packaging and to re-weigh it" because the packaging was

20  substantial. (See ECF No. 168 at 111-12.) Mr. Brace argued in objections to the PSR and at

21  movant's sentencing hearing that without consideration of the cannabis plants and packaging, the

22  base offense level should be a level 24, rather than 26. (ECF No. 94 at 15-16 ("The gross amount

23  was 404 [kilograms] without the plants, but it would be much less than that had the actual

24  _____

25  [9] At the evidentiary hearing, Mr. Brace suggested movant "already had everything" when he was
   appointed. (ECF No. 168 at 46-47.) Based on Mr. Brace's statement about receiving additional

26  discovery at the trial confirmation hearing on May 13, 2016, this was not the case. (See ECF No.
   91 at 2.) Moreover, Attorneys Megan Virga and Kevin McKinley testified the scope of their

27  firm's representation was focused on litigation of the suppression motions; they did not testify to
   having discussed anything related to trial preparation with movant. (See ECF No. 168 at 97-101;

28  ECF No. 169 at 34-41.)

1   marijuana been weighed" because "the packaging was probably 30 pounds when you get 846

2   individually-wrapped packages"); see also ECF No. 74-2 at 1-2.) Nevertheless, the plea

3   agreement required movant to admit to the quantity including all listed plants and the weight of

4   the packaging. (See ECF No. 67 at 13.)

5       Moreover, because both movant and Mr. Brace still anticipated the case proceeding to trial

6   approximately two weeks prior to the confirmed trial date, it is difficult to understand how Mr.

7   Brace determined a basic and reasonable investigation did not include hiring an investigator. Mr.

8   Brace determined movant had no viable defenses, but it is not clear how he reached such a

9   conclusion without conducting any investigation. (See ECF No. 168 at 12-14 (Mr. Brace testified

10  "[b]asically [the goal] was just to go through the motions of a trial so he could then start the

11  appeal process on all the denial of all of his motions to suppress"); ECF No. 136-1, Exhibit 1, ¶

12  16 (interview summary stating Mr. Brace indicated he did not hire an investigator "because there

13  were lots of firearms and huge amounts of drugs and money").) There is no evidence counsel

14  was, for example, more focused on developing mitigation evidence or some other reasonable

15  strategy. Compare Ayala v.Chappell, 829 F.3d 1081, 1103 (9th Cir. 2016) ("'[S]trategic choices

16  made after thorough investigation of law and facts relevant to plausible options are virtually

17  unchallengeable' under Strickland.") (quoting Strickland, 466 U.S. at 690).

18      Mr. Brace also did not file any motions in limine or respond to the three motions in limine

19  filed by the government. (See ECF No. 168 at 12-14.) He made this decision because "going to

20  trial was straightforward" for the purpose of "start[ing] the appeal process[.]" (Id. at 13.)

21  However, Mr. Brace's testimony that movant "wanted to go to trial [mainly] to get it over with so

22  he could file appeals" (id. at 13) was not credible. Considering all the record evidence, the

23  undersigned also does not find credible Mr. Brace's testimony that he was preparing for trial up

24  until the plea agreement preserving appellate rights came about shortly before the trial date. His

25  decision not to conduct any investigation whatsoever lacks a tactical explanation.

26      Considering all the circumstances, the representation and advice received from counsel

27  was "so incorrect and so insufficient that it undermined [movant's] ability to make an intelligent

28  decision about whether to accept the [plea] offer.'" Turner, 281 F.3d at 880 (quoting Day, 969

21

F.2d at 43). The representation "fell below an objective standard of reasonableness." Stanley, 633 F.3d at 862 (citing Strickland, 466 U.S. at 688).

### 3.   Prejudice

The remaining question is whether movant has demonstrated he was prejudiced by his counsel's performance. In order to show prejudice in this instance, movant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Frye, 566 U.S. at 148 (citing Hill, 474 U.S. at 59). The court looks to contemporaneous evidence substantiating movant's expressed preferences. Lee, 582 U.S. at 369. The inquiry "focuses on a defendant's decision-making." Id. What movant would have done "depends on his risk preferences and views regarding his likelihood of prevailing… at trial." United States v. Werle, 35 F.4th 1195, 1206 (9th Cir. 2022).

The plea agreement provided for dismissal of Count 2 of the Superseding Indictment—a charge carrying a ten-year mandatory minimum prison sentence—but movant ultimately received concurrent terms and a sentence well over ten years. Neither the government nor movant demonstrates that movant would have been subject to a higher or lower sentence following any conviction at trial. [10] Had movant proceeded to trial, he would have lost the two-level acceptance of responsibility adjustment. The Ninth Circuit has rejected an argument that no rational person in a defendant's position would risk forfeiting a three-level Guidelines reduction for acceptance of responsibility by proceeding to trial. Werle, 35 F.4th at 1202 (finding the record suggested the defendant was willing to take risks).

The evidence demonstrates movant was open to the risks that would have come with proceeding to trial. Movant indicated he wanted to proceed to trial when initially requesting appointed counsel. (ECF No. 168 at 129.) Movant's first letter to Judge Burrell, dated one week prior to the date on which he signed the plea agreement, indicated he was prepared to proceed to

---

[10] The government argues movant would have been subject to a higher base offense level following trial and that a threat of violence enhancement or obstruction of justice enhancement could have been applied. (ECF No. 136 at 19.) Movant disputes these assertions as lacking factual support and argues mitigating factors would have come out at trial supporting a lower quantity determination, showing compliance with State cannabis laws, and not supporting any increase in role in the offense. (ECF No. 140 at 21.)

1   trial and suggested he would be better off with standby counsel due to Mr. Brace's lack of

2   preparation. (ECF No. 99-2 at 13-16.) Mr. Brace and Mr. McKinley both testified movant wanted

3   to go to trial, with Mr. McKinley additionally recalling that movant believed he could prevail at

4   trial. (See ECF No. 168 at 31; ECF No. 169 at 39.)

5          Considering all the evidence, the undersigned finds credible movant's assertions that he

6   entered the plea agreement based substantially on counsel's prediction of sentencing

7   consequences, and that he also felt compelled to accept the offer because he believed counsel was

8   unprepared to competently represent him at trial. (ECF No. 168 at 141-143; see also ECF No. 99-

9   2, ¶ 21.) In the absence of counsel's deficient performance, there is a reasonable probability that

10  movant would have proceeded to trial. See Werle, 35 F.4th at 1206-07. Thus, movant has

11  demonstrated he was prejudiced by his counsel's deficient performance. See Frye, 566 U.S. at

12  148 (citing Hill, 474 U.S. at 59).

13         **IV.    Conclusion and Recommendation**

14          Movant has shown ineffective assistance of counsel during plea negotiations and a

15  resulting miscarriage of justice. Accordingly, IT IS RECOMMENDED that the January 6, 2020

16  (ECF No. 99) motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be

17  GRANTED, and movant's involuntary plea be vacated.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14)

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties. Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

23  objections shall be served and filed within seven (7) days after service of the objections. The

24  parties are advised that failure to file objections within the specified time may waive the right to

25  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26  DATED: February 14, 2024

27

28  DLB7; thri0308.2255.fr

          DEBORAH BARNES
          UNITED STATES MAGISTRATE JUDGE